# New England Mortgage Security Co. *v.* Hirsch Bros.

*Bill in Equity for Foreclosure of Mortgage.*

1   *Priorities between recorded mortgage*.— When a mortgagee, having notice of a later recorded mortgage executed by his mortgagor to a third person upon the same property, gives a receipt for the amount secured by his mortgage, executes a release of his mortgage security, and takes a new mortgage upon the same property to secure the payment of a new note, unless he proves that the receipt and release were not intended to operate as a satisfaction of the old mortgage debt and a release of the lien of the old mortgage, in the absence of fraud, accident, or mistake of fact, the lien of the new mortgage is subordinate to that of the intervening mortgage, unless the intervening mortgagee has done something to estop himself from asserting the superiority of the lien of his mortgage.

APPEAL from the Chancery Court of Russell.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed May 10, 1890, by Herman Hirsch and Abe Hirsch, suing as partners composing the firm of Hirsch Bros., and sought the foreclosure of a mortgage on lands, executed to them by Thomas H. Moody and his wife, Margaret Moody, on January 15, 1886, and which was filed for record on the same day in the office of the judge of probate of Russell county. The mortgagors, the New England Mortgage Security Company, and others, were made parties defendant to the bill. The New England Mortgage Security Company answered the bill, and the following facts were developed by the pleadings and the proof: On December 23, 1881, the defendants Moody and his wife executed a mortgage on the same lands to the New England Mortgage Security Company. On January 13, 1882, this mortgage was duly recorded in the office of the judge of probate of Russell county, where the lands are situated. The principal note secured by it was payable December 6, 1886. In March, 1887, a receipt and release in the following words was executed by the New England Mortgage Security Company, and was duly recorded: "In consideration of the payment of the debt named therein, The New England Mortgage Security Company releases the mortgage made by Thomas H. Moody and wife, dated December 23rd, 1881, to said company, which is recorded in Book 2 of Mort-

[New England Mortgage Security Co. v. Hirsch Bros.]

gages, page 409, of the Records of Russell county, Alabama." On March 10, 1887, said Moody and his wife executed another mortgage upon the same lands to the Mortgage Security Company to secure the payment of a new note, which was made payable five years from the date thereof, and also notes for the payment of interest as it should accrue annually. The Mortgage Security Company set up in its answer that the new notes and mortgage were executed and delivered by way of a renewal and extension of the old debt, and that both the new and the old mortgages were executed to secure the same amount and the same debt. It contended that the priority of the lien of the first mortgage to it had not been destroyed, but was preserved by the second mortgage.

On the final submission of the cause on the pleadings and proof, it was decreed that the mortgage to the complainants was entitled to priority over the mortgage of March 10, 1887, to the New England Mortgage Security Company, under which that company claimed a superior lien. That company appeals, and assigns this decree as error.

CALDWELL BRADSHAW, and WATTS & SON, for appellant. (1.) The giving of the second mortgage on the same property in renewal of the old debt was not a satisfaction of the old mortgage, and did not impair its lien.—*Boyd v. Beck*, 29 Ala. 708; *Helmetay v. Frank*, 61 Ala. 67. (2.) The burden of establishing that the old mortgage debt had been paid was on Hirsch Bros.—*McWilliams v. Phillips*, 71 Ala. 80; *Lehman v. McQueen*, 65 Ala. 570. (3.) Herman Hirsch, one of the firm of Hirsch Bros., acted as the agent of Moody in procuring the extension, and knew that the debt secured by the old mortgage had not been paid. (4.) The effect of a release at common law has been modified by our statute. Under the statute, it has effect according to the intention of the parties. It may be treated as a mere receipt.—*Cowan v. Sapp*, 74 Ala. 44; *Carroll v. Corbett*, 57 Ala. 579; *Smith v. Gayle*, 58 Ala. 600.

NORMAN & SON, *contra*.

McCLELLAN, J.—While it is the law that the mere taking of a new note and mortgage, the debt evidenced by the former and the property embraced in the latter being the same, will not discharge or displace the lien of an existing mortgage, it is equally well settled law that where the new transaction involves the payment and satisfaction of the

first mortgage, the mortgagee's rights are dominated by intervening liens of third persons, liens acquired subsequent to the execution of the first and prior to the execution of the second mortgage.—*Boyd v. Beck*, 29 Ala. 703; *Helmetag v. Frank*, 61 Ala 67; 2 Jones on Mortgages, § 927a; 15 Am. & Eng. Encyc. of Law pp. 869–79–71; *Bolles v. Chauncey*, 8 Conn. 389; *Walters v. Walters*, 73 Ind, 425.

And whether the taking of the second mortgage is a payment of the first depends upon the intention of the parties. When no receipt is given as for the amount secured by the first mortgage, and no release thereof is executed, the presumption is that the later notes and mortgage were not intended to pay and discharge the earlier. When such receipt is given or release executed, the contrary presumption obtains. But this is only a *prima facie* presumption. It may be met and overturned, whatever the form of the paper writing relied on as evidencing payment and discharge, by proof of an intent of the parties ·that the receipt or release was not to operate according to its expressed terms, but was executed for other purpose than to show the satisfaction of the mortgage debt and release of the mortgage lien.—Code, § 2774; *Carroll v. Corbett*, 57 Ala. 579; *Smith v. Gayle*, 58 Ala. 600; *Cowan v. Sapp*, 74 Ala. 44.

We do not think the New England Mortgage Co. has discharged the burden resting on it to rebut the presumption of satisfaction and release of the mortgage of December 23, 1881, by showing that the acknowledgment of payment and the release executed by it on March 14, 1887, was not intended as a receipt for the debt secured thereby, and a release of all lien and claim thereunder. There is nothing in this record going to show that the release in question imports upon its face anything other than the parties intended it should. It was manifestly the purpose of the company to discharge and annul the first mortgage, and rely alone upon that executed on March 10, 1887, to secure the debt due from Moody to it. It may be that those representing the corporation in taking the second mortgage supposed that its lien would relate back and take precedence as of the date of the original mortgage, for the debt secured by and upon the land included in which the second mortgage was taken, and that had it been known that such a result would not be attained, the first mortgage would not have been satisfied and discharged; but this consideration discloses only a legal sophistry operating to induce the company to release the first mortgage, but having no tendency whatever to show that it did not intend the release and sat-

isfaction which it executed, but going, to the contrary, to show that it was fully intended to do what appears on the face of the paper to have been done, though that intention would not have been entertained, it may be, had the parties apprehended the legal consequences of the act. These consequences were that the mortgage of December 20, 1881, was as if it had never existed, the lien of The New England Mortgage Co. dates back only to March 10, 1887, and the mortgage of complainants executed January 15, 1886, has priority over the lien of the respondent.—2 Jones on Mortgages, § 927a; *Stearns v. Godfrey*, 16 Me., 159; *Washington v. Slaughter*, 54 Iowa. 265; *St. Albans Trust Co. v. Farrar*, 53 Vt. 542; *Dingman v. Randall*, 13 Cal. 512.

Had the release been the result of fraud, or mistake *of fact*, or accident, the jurisdiction of equity might be invoked to relieve against it; but the evidence of fraud, accident or mistake is required to be very clear to induce the court to interfere, annul the discharges, rehabilitate the first mortgage and give it priority over intervening liens.—Authorities *supra*. There is no evidence of fraud in this record,—no concealment or misrepresentation in the premises on the part of any person having an interest therein,—none of accident, and none of mistake, except of a mistake of law as to the effect of the release, and against which Chancery Courts do not grant relief.

Again, had the release been executed in ignorance of the intervening lien of the complainants, and upon the assumption of its non existence, *it seems*, that the mortgage released might be restored in equity and given its original priority as a lien, (2 Jones on Mortgages, § 971, and authorities cited;) but it does not appear in this case that the respondent was ignorant of the existence of Hirsh Bros.' mortgage, but to the contrary, that its agents had actual notice thereof.

Something is said in briefs of counsel in respect of the connection complainants had with the execution of Moody's second mortgage to the respondent corporation, and its satisfaction and release of the first; but we find nothing in the conduct of complainants to estop them to now assert the superiority of their lien to that of said second mortgage. It is true that they knew of the negotiations between Moody and the company which resulted in the execution of the second and cancellation of the first mortgage, and it may also be conceded that they aided Moody in raising the sum necessary to be paid to consummate that negotiation, as a matter between them, but they neither did or said anything so far as this record shows, nor refrained from proper action

or speech, to induce the action taken by the corporation; and certainly there was no duty resting on them to affirmatively object to that action.

The decree is affirmed.