# Higman *v.* Humes.

*Bill in Equity to cancel Mortgage as a Cloud upon Title and to enjoin a Claim thereunder.*

1. *Mortgage; when taking a second mortgage constitutes payment of first mortgage.*—Whether the taking of a second mortgage by a mortgagee upon the same lands, is the payment of the first mortgage depends upon the intention of the parties; and where the purpose and object of the parties is simply a renewal and extension of the old debt, the taking of the second mortgage will not constitute a payment of the mortgage debt, or discharge and release the lien of the first mortgage.

2. *Same; same.*—Where, in the taking of a second mortgage upon the same lands, it is the intention of the parties thereto simply to renew and extend the old debt, it is immaterial what form the transaction may take in effectuating such purpose; and in the absence of fraud or of prejudice to the rights of third parties, it is no objection to such transaction that the purpose is sought to be effectuated through the aid of a court of chancery by a decree of foreclosure.

3. *Same; same; case at bar.*—Where, by mutual agreement and understanding between a mortgagee and a mortgagor, a decree of foreclosure is rendered, and at the sale thereunder the mortgagor becomes the purchaser and executes to the

[Higman v. Humes.]

mortgagee new notes and a new mortgage for the amount of
the mortgage debt, and this arrangement was entered into
simply for the renewal and extension of the old debt and not
with the intention of discharging or releasing the lien of the
first mortgage, the foreclosure sale of the mortgaged premises,
the purchase thereof by the mortgagor, and the execution of
the new note and mortgage, does not discharge and release
the lien of the first mortgage so as to make it inferior and
subordinate to a second mortgage, which was given by the
said mortgagor to a third party on the same lands, subsequent
to the execution of the prior mortgage which was foreclosed,
but prior to the commencement of the foreclosure proceedings.

4. *Conveyance; statutory warranty.*—While the words "bargain,
sell and convey," as contained in a conveyance, operate by
virtue of the statute as a warranty of title, and under them, as
a general rule, a subsequently acquired title by the grantor
will enure to the grantee, such words can not operate to dis-
place or impair an outstanding lien or claim in a third party.

APPEAL from the Chancery Court of Morgan.

Heard before the HON. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellee, Milton
Humes, against the appellant, John Higman, Jr., and
another, and sought to have a mortgage executed to the
defendant Higman declared a cloud upon the
title of the complainant, and further prayed
that the title to said lands specifically described in
said bill be invested in the complainant, and that
the defendant John Higman, Jr., be perpetually en-
joined from asserting any rights to said property under
the mortgage upon said lands which was given to said
Higman. The facts of the case, as averred in the bill, are
sufficiently stated in the opinion. The defendant, John
Higman, Jr., demurred to the bill upon substantially the
following grounds: 1. That the averments of the bill
show that the rights of the defendant Higman were par-
amount to those of the complainant. 2. That by the
foreclosure of the mortgage at the suit of the complain-
ant and the purchase at said foreclosure sale by the mort-
gagor, all the title to said lands invested *eo instanti* in
the defendant by virtue of the words of statutory war-
ranty given in the mortgage to the defendant. 3. It was
shown by the averments of the bill that the title of the

complainant is not superior to the title of the defendant. The defendant Higman also moved to dismiss the bill for want of equity.

Upon the submission of the cause upon the demurrer and the motion to dismiss the bill for want of equity, the chancellor rendered a decree overruling said demurrer and motion. The defendant appeals, and assigns the rendition thereof as error.

E. W. GODBEY, for appellant.—When Humes foreclosed the original mortgage, allowed H. C. Higman to become the purchaser, and procured a confirmation of that sale, then H. C. Higman became fully vested with the interests of all the parties to the suit.—*Duvall v. McCloskey*, 1 Ala. 708; *Prickett v. Sibert*, 75 Ala. 315; 2 Jones on Mortgages, § 1654. H. C. Higman thus became the absolute owner on the very day of his purchase, which was long before the execution by him of his second mortgage to Humes.—*Haralson v. George*, 56 Ala. 295. This perfected title, so vested in him as against all the parties to the foreclosure suit, immediately passed to John Higman, Jr., by virtue of the intervening mortgage to him which H. C. Higman had, in the meantime, executed, and which contained words of statutory warranty. *Swan v. Gaston*, 87 Ala. 569. After adjournment of the term a final decree can not be varied; nor can its effect be subverted by unnoted agreements between the parties made prior to its rendition.—*Adler v. Van Kirk Land Co.*, 114 Ala. 551; *McDonald v. Pearson*, 114 Ala. 630; *Dial v. Gambrel*, 28 So. Rep. 1; 126 Ala. 151.

HUMES & SPEAKE, contra, cited *N. E. M. S. Co. v. Hirsh Bros.*, 96 Ala. 234; *Boyd v. Beck*, 29 Ala. 703; *Helmetag v. Frank*, 61 Ala. 67; *Connor v. Banks*, 18 Ala. 42; *Cullum v. Bank*, 23 Ala. 797; *Marlowe v. Benagh*, 52 Ala. 113; *McGuire v. Van Pelt*, 55 Ala. 345; *Woodward v. Echols*, 58 Ala. 665; *Kieser v. Baldwin*, 62 Ala. 527.

DOWDELL, J.—The appeal in this case is taken from the decree of the chancellor rendered on December 16th, 1898, overruling the demurrer of the respondent John

Higman, Jr., to complainant's bill and also the motion of said respondent to dismiss the bill for want of equity. The vital question raised by the demurrer and motion, and the one urged in argument by counsel, is one of priority between mortgagees. The facts as stated in the bill are substantially as follows: On the 14th of January, 1888, the respondent Harris C. Higman together with Newton B. Hall and George Smith executed a mortgage to the complainant Humes and Eugene C. Gordon, Lionel W. Day, George E. Crane and Hiram G. Bond on the land involved for the balance of the purchase money due thereon. The complainant Humes subsequently became the sole owner of the mortgage debt, and filed a bill on the 17th of April, 1895, to foreclose said mortgage. The mortgagors and the co-mortgagees were made parties respondents to this bill. On September 10th, 1895, complainant Humes and respondent Harris C. Higman entered into a written agreement, by the terms of which the said Higman was to withdraw his defense to said suit and consent to the rendition of a decree of foreclosure for the amount of the debt due on said mortgage, to-wit, $2,468, with the understanding that the said Higman was to become the purchaser at the foreclosure sale and to execute new notes and a new mortgage to secure the payment of said notes, the said notes to cover the amount of the decree. On September 12, 1895, a decree of foreclosure was rendered, and October 28th, 1895, the land was sold by the register under said decree, at which said sale said Higman in pursuance of his said agreement became the purchaser, bidding the sum of $500. On February 19th, 1896, the sale was confirmed by the court on the report of the register that the purchaser, the said Higman, had made satisfactory arrangement with the complainant. On November the 28th, 1895, and before the delivery of the register's deed of the same date, Higman executed the second mortgage to Humes on the same property, which was filed for record on February 4th, 1896, and on which same day the register's deed to Higman was filed for record. The mortgage in favor of John Higman, Jr., executed by said Harris C. Higman on the same lands,

[Higman v. Humes.]

bears date of October 7th, 1889, and was recorded November 5th, 1889, long subsequent in time, both as to execution and record, to the mortgage by H. C. Higman and others to Humes and others, and which was foreclosed under the agreement as above stated between Humes and Higman.

It is distinctly averred in the bill, that it was not the intention of the parties in the making of the agreement of September 10th, 1895, or by the foreclosure proceedings had in pursuance thereof to discharge and release the lien of the first mortgage. On the other hand, it is averred that the sole intent and purpose of making said agreement and having a sale in accordance with its terms, and the giving and taking of new notes and new mortgage, were simply to extend or renew the debt. As between the immediate parties to the transaction, the effect of taking the new notes and mortgage depends entirely on the intention of the parties, and this is a matter dependent upon proof, and should not be eliminated from the case by a ruling upon the pleading. Even the giving of a receipt and release absolute on its face for the amount secured by the first mortgage, does not destory the lien of the original mortgage unless so intended by the parties. "Whether the taking of the second mortgage is a payment of the first depends upon the *intention* of the parties. When no receipt is given as for the amount secured by the first mortgage, and no release thereof is executed, the presumption is that the latter notes and mortgage were not intended to discharge and pay the earlier. When such receipt is given or release executed, the contrary presumption obtains. But this is only a *prima facie* presumption. It may be met and overturned, whatever the form of the paper relied upon as evidencing payment and discharge, by proof of an intent of the parties that the receipt or release was not to operate according to its express terms, but was executed for other purpose than to show the satisfaction of the mortgage debt and release of the mortgage lien." *N. E. M. S. Co. v. Hirsh Bros.*, 96 Ala. 234.

In the case at bar no receipt or release was given, but in addition to the taking of new notes and mortgage, the transaction between the parties included the fore-

closure proceedings had in the chancery court. Where the purpose or object of the parties is the renewal and extension of the old debt, it is unimportant what form the transaction may take in effectuating such purpose, the intention at last must control. Nor can it be any objection, in the absence of fraud, upon, or prejudice to, the rights of third persons, that such purpose is sought to be effectuated by parties through the aid of the court's judgments and decrees.

To hold that Humes is estopped by the decree of the chancery court in the foreclosure proceedings would be to ignore the agreement between Humes and H. C. Higman, and to disregard one of the prime objects of these proceedings as well as the intention of the parties to this transaction. Whatever effect the decree of foreclosure may have had upon the mortgage debt under the doctrine of merger of a lower into a higher evidence of debt, the lien under the mortgage was not thereby destroyed, but was preserved and continued as a security for the payment of the decree. The sale had under this decree and the purchase by the mortgagor Higman was in pursuance of his agreement with Humes and a link in the transaction by which a renewal and extension of the old debt was to be accomplished and secured. The collection of the debt evidenced by the decree was not in the contemplation of the parties in having the sale, and hence it cannot be said that the lien or security was destroyed or exhausted by the sale. We are not to be understood as asserting that a sale under a decree of foreclosure does not as a general proposition exhaust the lien under the decree, but what we have said is limited to the facts of this particular case.

Our conclusion is that Humes' lien, originating under the first mortgage, was not lost by the transaction with his mortgagor Higman. Did he lose his priority over the lien of the junior mortgage to John Higman? As we have seen, John Higman's mortgage was subsequent in execution to Humes' first or original mortgage, but prior to the foreclosure proceedings, the agreement between Humes and H. C. Higman, and the execution of the new or second mortgage to Humes. It is not pre-

[Higman v. Humes.]

tended but that the lien under the mortgage of John Higman was subordinate to the lien under Humes' first mortgage. John Higman parted with nothing upon the faith of the foreclosure proceedings and the sale made thereunder to H. C. Higman. He acquired no new right nor suffered any detriment by reason of the transaction between Humes and H. C. Higman, which under the facts as alleged in the bill was nothing more or less, in effect, than a renewal and extension of the old debt. "The extension of time of payment of the mortgage debt does not impair the security as against subsequent encumbrances."—15 Am. & Eng. Encyc. Law, p. 872, note 1; 1 Jones on Mortgages, (5th ed.), §§ 927, 942.

It is urged by counsel for appellant that the legal title conveyed by the register's deed to H. C. Higman passed *eo instanti* to John Higman by virtue of the words "bargain, sell and convey" contained in his mortgage. While these words operate as a warranty of title, by virtue of the statute, and under them a subsequently acquired title by the grantor, as a rule, will enure to the benefit of the grantee, they cannot operate to displace or impair an outstanding lien or claim in a third person.

The decree of the chancellor overruling the demurrer and motion to dismiss the bill for want of equity must be affirmed.

Affirmed.