[New England Mortgage Security Co. v. Fry.]

[Fry v. New England Mortgage Security Co.]

# New England Mortgage Security Company *v.* Fry.

# Fry *v.* New England Mortgage Security Company.

*Bill in Equity for the Foreclosure of a Mortgage.*

1   *Warranty, statutory covenant of; title, subsequent acquirement of.*—The settled doctrine in this State is that if a person, having at the time no title, conveys land by warrant and afterwards acquires a title, such title will inure and pass *eo instanti* to his grantee, and that the doctrine applies when the warranty is such as the law implies from the employment of the statutory words.

2.  *Statutory redemption; contracts; lien under a contract to induce advancement of money for redemption.*—While a subsequently acquired title vests immediately in a former grantee under a warranty, such title will be held in subrogation to a lien created by contract of the grantor to secure the money used in acquiring the title under the statute of redemption.

3.  *Possession of prior lien holder; effect as to a holder of subordinate incumbrance.*—A prior lien holder, in possession of the premises, is accountable for rents and profits in favor of a holder of a subordinate incumbrance.

4   *Prior lien, equitable assignment of; subrogation, limitation of.*— Where a prior mortgage lien is discharged by money loaned for that special purpose, the mortgage given to secure such loan may be enforced as against equities which, but for the equitable assignment of such prior mortgage, would be superior to the second mortgage; but the doctrine of subrogation cannot be extended to a third mortgagee, with notice of such equities, who advances the money to pay off such second mortgage.

5.  *Subrogation; subordinate lien holder.*—A subordinate lien holder cannot avail himself of the right of subrogation to a prior lien discharged by him, without offering to recognize the rights and equities of the lienor under the prior mortgage.

6.  *Pleading and practice; set-off; failure to plead does not affect*

[New England Mortgage Security Co. v. Fry.]

[Fry v. New England Mortgage Security Co.]

*right to bring an independent suit.*—The right of a defendant to interpose a plea of set-off is purely statutory, and its interposition is discretionary on the part of the defendant. The failure to plead an existing set-off does not bar defendant's right of action in an independent suit.

7. *Mortgage, alienee of; adverse possession.*—Neither the possession of a mortgagor, nor of his alienee, can he regarded as adverse to the mortgagee unless there has been an express disclaimer of his rights brought to the knowledge of the mortgagee.

8. *Registration of conveyances; extent of constructive notice.*—The record of a deed or mortgage is notice to subsequent purchasers, but not to prior ones.

9. *Time; fractional parts of a day, when regarded.*—The legal fiction that, in law, there are no divisions or fractions of a day, has no application to transactions between parties where priority of rights becomes a question of fact.

10. *Pleading and practice; defense to action; equal or paramount rights; burden of proof.*—Where in defense of an action the defendant asserts equal or paramount rights in himself, the burden of proof is cast upon him, and he fails to sustain such burden by merely proving, without more, that the rights of complainant and defendant originated on the same day.

APPEAL from the City Court of Selma, in Equity.

Heard before the Hon. J. W. MABRY.

It will only be necessary to set out such facts as do not sufficiently appear in the opinion of the court. The mortgages by Thomas Gill Gayle to complainant, Anna M. Fry, and to Billups J. Gayle, were each executed and recorded on December 15, 1880. Prior to the execution of these instruments, to-wit, on November 22, 1880, the sheriff of Dallas county, under an execution against Thomas Gill Gayle, had sold and conveyed the lands embraced in said mortgages to Mrs. S. J. Beard, as executrix. Mrs. Beard afterwards conveyed the lands to William Johnston, who subsequently, on October 5, 1882, conveyed the same to Thomas Gill Gayle. The money to redeem the land from the execution sale was furnished by Billups J. Gayle and to secure its advance Thomas Gill Gayle executed a mortgage thereon to Billups J. Gayle. Subsequently, being unable to pay said mort-

gage, Thomas Gill Gayle executed on January 24, 1885, a conveyance of said lands to Billups J. Gayle. Afterwards, on March 24, 1890, said Billups J. Gayle executed a mortgage on said land and other land to the New England Mortgage Security Company to secure a loan of $3,000 then made to said Billups J. Gayle. Said mortgage was not paid at maturity, and was duly foreclosed and the lands purchased by the New England Mortgage Security Company, and a deed executed to it for the same. The cross-bill filed by the New England Mortgage Security Company avers that in January, 1884, said Billups J. Gayle applied to the firm of Wailes & Co. for a loan and proposed as security a mortgage on certain lands including those acquired from Thomas Gill Gayle; that said firm refused to make such loan unless the complainant, Anna M. Fry, would declare that she had no interest in said lands, and would join in the mortgage thereon, and that the said Anna M. Fry did make such declaration and joined in the execution of the mortgage given to secure the loan then made to said Billups J. Gayle. That, upon the maturity of the Wailes mortgage, said Billups J. Gayle applied to one W. W. Burns for a loan with which to pay said Wailes mortgage. That said Burns refused to make such loan unless said complainant, Anna M. Fry, would declare that she claimed no interest in the lands proposed to be mortgaged as security. That said Anna M. Fry did make such declaration and that Burns was induced thereby to make such loan to said Billups J. Gayle, and to receive as security a mortgage executed by him on lands including those embraced in the mortgage from Thomas Gill Gayle to said Anna M. Fry. The cross-bill further avers that a large portion of the loan thus obtained from said Burns was used in paying off the mortgage debt to said Wailes & Co. The cross-bill further avers that about November 5, 1890, said Billups J. Gayle, with the knowledge and consent of said Anna M. Fry, applied to cross-complainant, the said New England Mortgage Security Company, for a loan of $3,000 to be used in paying off, so far as it would go, the mortgage previously executed to said W. W. Burns. In said application for such loan

it was represented unto said New England Mortgage Security Company that it should have a first lien on said lands, and that the balance due said Burns not paid out of said loan would be arranged by said Billups J. Gayle with other securities. That said New England Mortgage Security Company made such loan of $3,000, and the same was applied in payment on said Burns mortgage, and that said Billups J. Gayle duly executed a mortgage on the lands in controversy and on other lands to secure the loan as made to him by said New England Mortgage Security Company. The mortgage to said Burns was marked satisfied on the records. The relief sought by the cross-bill is that the New England Mortgage Security Company may be subrogated to the lien and rights acquired by said Billups J. Gayle by reason of his having furnished the money with which said Thomas Gill Gayle redeemed the mortgaged premises from execution sale, under the contract made between said Thomas Gill Gayle and Billups J. Gayle, and that the said lien be held to be paramount to any lien held by complainant, Anna M. Fry, on said land; that said New England Mortgage Security Company be further subrogated to the lien of the mortgage executed by complainant and said Billups J. Gayle, as to the lands in controversy, to Wailes & Co., dated January 15, 1884, by reason of the application to the payment of said mortgage the money borrowed from said W. W. Burns, and by reason of the application of the $3,000, afterwards borrowed from cross-complainant, to the payment of the mortgage executed to the said Burns. The New England Mortgage Security Company further prays that it may also, by reason of facts above recited, be subrogated to the lien of said Burns mortgage to the extent of the $3,000 advanced by it and paid thereon. It further prays that it be subrogated to all rights arising in favor of said Burns by reason of the estoppel against said Anna M. Fry, growing out of her representations to said Burns at the time of the execution of said mortgage to said Burns. To the original bill, the New England Mortgage Security Company was made sole defendant, and the relief sought was

the foreclosure of the mortgage given by Thomas Gill Gayle to Anna M. Fry on December 15, 1880. Anna M. Fry, Billups J. Gayle, Wailes & Co. and W. W. Burns were made parties defendant to the cross-bill filed by the New England Mortgage Security Company. By the first degree of the city court, it was adjudged that the mortgage executed by Thomas Gill Gayle to Anna M. Fry on December 15, 1880, was a valid lien enforceable against the lands described therein. It was further held that the mortgage executed by Thomas Gill Gayle to Billups J. Gayle on December 15, 1880, was of equal force—neither being superior in right to the other—to the mortgage executed on the same day to Anna M. Fry, and that the New England Mortgage Security Company had succeeded to all the rights under said mortgage of said Billups J. Gayle. It was also decreed that the New England Mortgage Security Company was subrogated to the equitable charge arising in favor of Billups J. Gayle by reason of his advancement of the money with which to redeem said land from the execution sale, and that said equitable charge was superior to the mortgage rights of complainant. The original complainant and the cross-complainant both appealed.

MALLORY & MALLORY, for Anna M. Fry.—A title subsequently acquired inures to the grantee under a warranty deed.—*Chapman v. Abraham*, 61 Ala. 108; *Chambers v. Ringstaff*, 69 Ala. 140; *Booker v. Knight*, 81 Ala. 550; *Hargrove v. Melbourne*, 86 Ala. 270; *Swann & Billups v. Gaston*, 87 Ala. 569.

The use of the statutory words "Grant, bargain and sell" is as efficacious to pass a subsequently acquired title as a deed containing full covenants of warranty.— *Blakeslee v. Mobile Life Ins. Co.*, 57 Ala. 205, and cases cited *supra*.

The contention of the New England Mortgage Security Company, that the mortgage of Anna M. Fry was destroyed by the intervening equity arising by reason of the advance by Billups J. Gayle of the money to redeem the land from Johnston, cannot be upheld. At best this transaction would but create a superior equity

41

[New England Mortgage Security Co. v. Fry.]

[Fry v. New England Mortgage Security Co.]

to the mortgage. The Mortgage Security Company acquired no rights under subrogation to the Wailes mortgage, or to the Burns mortgage.—56 Ala. 41; 3 Ala. 302; 40 Ala. 633; 120 Ala. 251; 24 Am. & Eng. Ency. 281, 290-1, and authorities cited.

The Mortgage Security Company has no privity with the estoppels sought to be set up, growing out of alleged representations to Wailes and Burns.—11 Am. & Eng. Ency. 439, and authorities cited; *Meyer v. Byrne,* 99 Ala. 484; *Prickett & Maddox v. Sibert,* 75 Ala. 315; *Gamble v. Gamble,* 11 Ala. 966; *Ware v. Cowles,* 24 Ala. 446.

The complainant is not affected by representations by Billups J. Gayle as to the purpose for which he desired to borrow money from the Mortgage Security Company, or as to the quality of the lien on the land to be given as security.—*Porter v. Wheeler,* 105 Ala. 458; *Steele v. Adams,* 21 Ala. 534; Bigelow on Estoppel, 594; 11 Am. & Eng. Ency., 435-6.

JAMES E. WEBB, *contra.*—The true reason of the rule vesting a subsequently acquired title in the grantee under a warranty deed is based upon estoppel, arising from breach of covenant of warranty, to prevent circuity of action.—*Chapman v. Abraham,* 61 Ala. 108; *Huzzy v. Hefferman,* 143 Mass. 232; *Knight v. Thayer,* 125 Mass. 27; *Smiley v. Fries,* 104 Ill. 416; *Jones v. King,* 25 Ill. 383.

There was no express covenant in the mortgage from Thomas Gill Gayle to Anna M. Fry. The only covenant is the one implied from the use of the words, "Grant, bargain and sell." As to the meaning and extent of the statutory warranty see *Heflin v. Philips,* 96 Ala. 561; 3 Brick. Dig., p. 749, § 16; *Roebuck v. Dupuy,* 2 Ala. 535; *Griffin v. Reynolds,* 17 Ala. 198.

In the last cited case Chief Justice DORGAN says: "But this covenant extends to acts done by grantor or his heirs *only.* They do not impart a covenant of seisin, nor a general covenant against incumbrances, nor quiet enjoyment."

If that be true, then the sale of Thomas Gill Gayle's

land by the sheriff of Dallas county under an execution against him, not being an act done by T. G. Gayle, does not constitute a breach of the statutory covenants arising from the use of the words, "Grant, bargain and sell." If the above proposition is correct it ends the whole case.

The Mortgage Security Company was entitled to be subrogated to the lien of the Burns mortgage.—3 Pom. Eq. Jur., § 1212; 24 Am. & Eng. Ency., pp. 269, 270, 271; *Cobb v. Dyer,* 69 Maine 494; *Walker v. King,* 45 Vt. 525; *Twombly v. Cassidy,* 82 N. Y. 155; *Barns v. Mott,* 64 N. Y. 397; 1 Jones on Mort., § § 855, 874.

McCLELLAN, C. J.—The bill in this case was filed on February 14th, 1898, by Mrs. Fry, for the foreclosure of a mortgage executed to the complainant on December 15th, 1880, by Thomas Gill Gayle. The mortgage originally covered an undivided interest in certain lands which were subsequently partitioned. The bill prays the sale of the lands, assigned in the partition proceedings to the mortgagor. It appears from the bill that the interest of the mortgagor in the land had been subsequently conveyed to the New England Mortgage Security Company, and it is properly made the sole party defendant.

The New England Mortgage Security Company filed several pleas to the bill, and also a cross-bill asserting equities claimed to be paramount to the lien of the mortgage to complainant. The defenses set up in the pleas and the equities claimed will be considered with the statement of facts pertinent to each.

It appears that before the execution of the mortgage to complainant, the interest of the mortgagor in the land embraced therein had been sold under execution, and the deed conveying such interest had been executed to the purchaser. After the mortgage was executed the title to the property had revested in the mortgagor by the exercise of the statutory right of redemption. The mortgage contained no express covenant of warranty, but used the statutory words, "Grant, bargain and sell" implying the statutory warranty, that the grantor was seized of an indefeasible estate in fee simple, free from incumbrances done or suffered by the grantor. It is con-

tended by appellant that, by reason of the execution sale, the grantor had no title at the time of execution of the mortgage· to complainant which he could convey, and that the title subsequently acquired by the mortgagor by the exercise of the statutory right of redemption, did not inure to complainant's benefit by virtue of the warranty implied by the use of the statutory words. "The settled doctrine in this State is that if a person having at the time no title conveys land by warranty, and afterwards acquires a title, such title will inure and pass *eo instanti* to his grantee; and that the doctrine applies when the warranty is such as the law implies from the employment of the statutory words."—*Swann & Billups v. Gaston,* 87 Ala. 569; *Higman v. Humes,* 127 Ala. 404.

It appears that the money with which Thomas Gill Gayle exercised the statutory right of redemption, amounting to $448.91, was furnished by Billups J. Gayle under the agreement or understanding with Thomas Gill Gayle, that he should have a first lien or mortgage on the land for his reimbursement, and that in pursuance of said agreement a mortgage was executed by Thomas Gill Gayle to Billups J. Gayle on the 3rd of October, 1882. While the title acquired by Thomas Gill Gayle by virtue of the redemption inured to the benefit of complainant by virtue of the words, "Bargain, sell and convey," contained in the mortgage to her, the lien or claim then existing in favor of Billups J. Gayle, under his contract with Thomas Gill Gayle for his reimbursement of the money furnished for redemption, was not thereby displaced nor impaired.—*Higman v. Humes, supra.*

Thomas Gill Gayle being unable to pay this mortgage executed to Billups J. Gayle, conveyed said lands to him for that purpose. Billups J. Gayle thereafter, under these facts, held the land subject to complainant's mortgage, which was unsatisfied of record, with the right, however, to assert against complainant his paramount intervening equity existing by reason of his furnishing the money for the redemption, and the New England Mortgage Security Company claiming under him can assert the same equity.—*Ohmer v. Boyer,* 89

Ala. 273. As this equity is asserted by the New England Mortgage Security Company, as a lien-holder being in possession of the property subject to the lien and to complainant's mortgage, it must as to such equity account for the rents and profits acquired by it from the land, and the same must be applied, less the necessary repairs and expenses, to the satisfaction of the lien claimed by subrogation.

The cross-complainant, the New England Mortgage Security Company, has no equity of subrogation to the lien of the Wailes mortgage.—*Bigelow v. Scott, et al.*, 135 Ala. 236.

Assuming without deciding that the Mortgage Company on the facts averred in the cross-bill has, abstractly speaking, the right of subrogation to the lien of the Burns mortgage, the cross-bill is wanting in necessary averments and offers to do equity to present that right against the complainant. The equity of subrogation attempted to be asserted was and is a mere right of action in the company, a right to have such subrogation decreed, and thereupon to have the lien of the Burns mortgage effectuated by a decree foreclosing that mortgage for its benefit. That mortgage has never been foreclosed, and claiming under it the cross-complainant stands in the shoes of the mortgagee. The foreclosure of its own mortgage did not affect Mrs. Fry's rights as mortgagor in the Burns mortgage. In that capacity she had and still has the equity of redemption. The cross complainant has the equity of subrogation. Upon being subrogated, its further right is to foreclose that mortgage. Meantime the company is a mortgagee in possession. The cross-bill, while asserting the equity of subrogation, contains neither the averments nor prayer nor offer to do equity essential to a bill for foreclosure; but to the contrary proposes to cut off absolutely Mrs. Fry's equity of redemption. It seeks to revivify the Burns mortgage and to bind Mrs. Fry's estate by it, while denying her all rights under it. The proposition of the cross-bill is to foreclose her rights under the Burns mortgage by force of the Gayle mortgage to the company, by which she was not bound at all except through the Burns

mortgage, without giving her any standing in court to effectuate her equity of redemption from the Burns mortgage. At the most, the Gayle mortgage to the company, and its foreclosure, gave the company as against Mrs. Fry only the rights of Burns against her; but the cross-bill purposes to cut off her rights against Burns absolutely because of the mere fact that the cross-complainant is entitled to have the Burns mortgage equitably assigned to it. To such end the cross-bill is without equity, and the chancellor properly sustained the demurrer which challenged its sufficiency in this aspect.

Nor could the mere fact that complainant had knowledge of and consented to the application for loan made by Billups J. Gayle to the New England Mortgage Security Company estop her from asserting the mortgage made to her. The evidence is insufficient to show that she did or said anything, or refrained from proper action or speech, to induce the action taken by the corporation, and certainly there was no duty resting on her to affirmatively object to that action.—*New England Mortgage Security Co. v. Hirsch Bros.*, 96 Ala. 232.

The partition of the property averred in the bill was by bill in equity. which averred that the mortgage executed to complainant was a lien upon the interest of Thomas Gill Gayle, one of the joint owners. The complainant by the averments and prayer of the bill was required to propound her claim, and have the same, if anything was due thereon, enforced against the portion of the lands which might be allotted to Thomas Gill Gayle. Complainant neglected or refused to propound her claim under the mortgage in the partition suit. She had been in possession, as administratrix, of the lands sought to be partitioned, and she was required in the partition suit to account for the rents and profits so received by her. Upon such account she was decreed to owe Thomas Gill Gayle $73.00 as his share as joint owner of said rents. It is claimed that this decree, in favor of Thomas Gill Gayle against complainant, was thus a judicial ascertainment that he owned her nothing, and that she is estopped from

foreclosing her mortgage.

If complainant by appropriate pleading might have set off the indebtedness of Thomas Gill Gayle under the mortgage to her against his claim against her for rents received by her, and thus extinguished it, she was not required to do so. "The settled doctrine of this Court now is that a set-off may or may not be pleaded at the election of the defendant, and that unless it is pleaded, the right to sue upon it as an independent cause of action or to rely upon it in defense of another action by the same plaintiff, is not affected or impaired by a judgment against the defendant."—*Roach v. Privett*, 90 Ala. 391, 395.

The New England Mortgage Security Company pleaded the adverse possession by Billups J. Gayle and itself for ten years. The evidence to sustain this plea is the execution and registration of the deed from Thomas Gill Gayle to Billups J. Gayle, January 24th, 1885, and the fact that in 1890 Billups J. Gayle, in his application to the company for a loan, stated that there were no incumbrances upon the property except the mortgage to Burns. As Thomas Gill Gayle, complainant's mortgagor, did not *prima facie* hold adversely to complainant, the presumption is that Billups J. Gayle, as alienee, held in the same right, and asserted no higher claim of title. "To convert such possession into an adverse holding, there must be a renunciation or disclaimer of the mortgagee's right, and that renunciation must be traced to his knowledge. Until this is done, such possession is not regarded as adverse."—*Smith v. Gilliam*, 80 Ala. 296-301.

It is contended that the registration of the deed to Billups J. Gayle was sufficient notice to the appellee of an adverse holding. Complainant's mortgage was recorded in 1880, and she is not charged with constructive notice of the subsequent conveyance to Billups J. Gayle. The record of a deed or mortgage is notice to subsequent purchasers of incumbrances, but not to prior ones. But if complainant was charged with knowledge of the deed to Billups J. Gayle from its registration, and the subsequent one executed to correct a mistake in the descrip-

tion of the former, they were both quit-claim deeds, purporting to transfer only the interest of Thomas Gill Gayle in the property. Complainant would therefore have had the right to assume that the conveyance was in subordination to her mortgage, and not adverse. Complainant denies that she had any notice that her title as mortgagee was disputed until 1897, when the New England Mortgage Security Company offered to sell her lands to a third person; and we do not think the evidence sufficient to charge her with notice of an adverse claim for the period named.

The foregoing disposes of all the questions raised by the New England Mortgage Security Company upon the appeal in chief, adversely to its contentions, and the decree, so far as brought into question upon its appeal, must be affirmed.

The complainant, Anna M. Fry, prosecutes a cross-appeal, the first error assigned being the subrogation of the New England Mortgage Security Company to the paramount lien held by Billups J. Gayle for money advanced by him to Thomas Gill Gayle for the redemption of the property sold under execution against him. As stated above this was proper.

It appears from the answer of the New England Mortgage Security Company, that on the 15th day of December, 1880, the same day the mortgage was executed by Thomas Gill Gayle to complainant, he executed a mortgage to Billups J. Gayle to secure indebtedness of $916.31. This mortgage to Billups J. Gayle was filed for record on the same day. It is averred in the answer that, while the mortgages to complainant and Billups J. Gayle bore the same date and were filed for record on the same date, "Still as a matter of fact, the said mortgage by the said Thomas Gill Gayle to said Billups J. Gayle, was prior in point of time to that executed to complainant." In the absence of any testimony upon this point, the chancellor held that it would be presumed that both mortgages were executed at the same time and that they were therefore of equal dignity, that neither was superior to the other, and ordered a reference to

[State, *ex rel.* Case v. Lyons.]

ascertain the amount due upon each.

When complainant proved the execution of the mortgage to her and the existence of the indebtedness thereby secured, she was entitled in the absence of defensive facts to a decree of foreclosure. If the respondent, the New England Mortgage Security Company, had any defense or a paramount or equal equity, the burden was upon it to allege such defense or equity and establish it by proof. There is, as has been said, no evidence to support the allegation that the mortgage to Billups J. Gayle dated December 15th, 1880, was paramount to the mortgage to complainant, and there is no proof that it was equal thereto except the fact that both mortgages were executed and recorded on the same day. This fact can be held sufficient proof only upon the application of the legal fiction that there are in law no divisions or fractions of a day. This fiction does not apply to transactions between parties where priority of right becomes a question of fact.—8 Am. & Eng. Ency. Law, p. 743, and authorities there cited.

The New England Mortgage Security Company having therefore failed to prove that the mortgage in question was executed at the same time as the mortgage to complainant, the court erred in holding it an equal lien. For this error on the appeal of complainant in the original bill, the decree will be modified as indicated, and as modified will be affirmed.

Modified and affirmed.

TYSON, DOWDELL and DENSON, J.J., concurring.