CHARLES G. EGGEMAN v. BERNARD EGGEMAN, MARIE EGGE-
MAN, JOHN K. HARROW AND COME ALLEN.

*Priority of Mortgage.*

The parties to a mortgage agreed that a new one should be sub-
stituted with a clear title.   Upon the same day on which
this was done, and without the knowledge of the mortgagees,
another mortgage was given to the mortgager's father-in-law,
who had advanced considerable money to the mortgager's
wife without asking repayment.   The testimony indicated.
that the mortgage was made to him without his participa-
tion, and with the fraudulent purpose of giving it priority.
*Held*, that it must be postponed to the other mortgage, since
even if he were an honest mortgagee, his mortgage, if made
first, was on premises already encumbered, and he had no
equities which would make it anything but a second mort-
gage; and if the original mortgage was exchanged under a
false pretense that the title was to be cleared, he was in no
position to object to the restoration of the old security in
behalf of the original mortgagees.

Appeal from Wayne.   Submitted Oct. 5.   Decided Oct. 23.

FORECLOSURE.   The facts are in the opinion.

*Moore & Griffin* (on brief) for plaintiff in error.

*Atkinson & Atkinson* (on brief) for defendants in error.

CAMPBELL, J.   This is an original bill in the nature of
a bill of revivor and supplement to foreclose a mortgage
dated December 7th, 1866, given by Bernard Eggeman and
Marie Eggeman his wife to Henry Miller deceased, who filed
his bill of foreclosure and died before hearing, his interest
having since his death been sold to complainant.

Defendants Harrow and Allen defend under securities
claimed to be equitably prior to that of complainant.

On the 12th of July, 1866, Bernard Eggeman and wife
made this bond and mortgage to Harrow. in the sum of
$3,000 on the lot in controversy and one other lot, to secure
the safe return of the barge Sheridan by the first day of

January thereafter.   Allen subsequently became interested with Harrow.   In December, 1866, the parties got together to settle this claim for the barge, and agreed to arrange it at $2,000, for which a new mortgage was to be given with clear title in lieu of the old one.   The new one was taken on one lot instead of on both, the release being intended to enable Eggeman to dispose of the lot left out of the second mortgage to raise money to pay the debt.   This mortgage to Harrow and Allen was made and delivered on the 7th day of December, 1866.   Harrow swears it was delivered about two o'clock in the afternoon, and left with Mr. Stoll to procure its registration.

On this same seventh day of December, 1866, Eggeman and wife executed, and some one procured to be recorded, a mortgage to Henry Miller, for $1,500 with interest at seven per cent. payable in one year from date, which is the instrument here sued on.

The question here presented is, which of these mortgages should be preferred.

The testimony is very clear that Harrow and Allen had a perfectly valid security under the first mortgage covering the lot in question, which if left unchanged had preference over any other.   There is no impeachment of the justice of their claim.   If they have lost priority it is by the gross fraud of Eggeman in getting up the mortgage to Miller, with a view of having it recorded so as to cut off the rights of defendants Harrow and Allen, who were to accept a new security in lieu of the old one, which was valid against every body.   The only object they had in changing securities was to accommodate Eggeman by releasing one of the lots mortgaged, and to settle the amount due them for the loss of their barge.   It is impossible for any one to find an honest explanation of Eggeman's conduct.   He admits that he wanted Miller's mortgage recorded first, and states that he wanted to pay him first.   To do this he got a good mortgage out of the way and an encumbered lot freed, and then sought to juggle his honest creditors out of their security. Both he and his wife undertake to swear that the Miller mortgage was executed a day or two before the other.   If

so, then the mortgage of July, 1866, having been obtained to be discharged by fraud subsequently to the other should be held in force. But there is no doubt of the execution of the Harrow and Allen mortgage on the 7th day of December.

The question then arises whether Henry Miller is entitled to protection against it. It appears that he was father of Mrs. Eggeman and lived with her. The story of the Eggemans is, that he advanced money in considerable amounts to them, and that one of his sons having found fault with him for doing so, or for doing it without security, he proposed that they should secure him by mortgage, and they did so.

It appears plainly that the father had not at any time requested repayment, and if this story is true it does not appear that Eggeman and his wife had ever promised to repay it. Their testimony is ambiguous, but the facts show— as they state them—that the old man had let his daughter have money from time to time in considerable sums. The items alleged were $360 in 1854, more than twelve years before the mortgage, $182 in 1862, and $870 in the fall of 1865. The first of these items had been outlawed twice over if it was a debt, and there are no money transactions shown to have taken place within a year before the mortgage. If the transactions are truly stated, the inference is very strong that the old man never intended to call upon his daughter to whom these sums were advanced, for payment. Be this as it may, he was not a pressing creditor, and looking at all the circumstances it is difficult to believe that his mortgage would ever have been heard of, if it had not been for the temptation presented by the expected shifting of Harrow's and Allen's securities.

But whether an honest mortgagee or not, if his mortgage was made first he took a title which was then encumbered of record to the amount of $3,000, and he has no equities which would make his security anything but a second mortgage. He gave nothing and did nothing which would have rendered it any wrong to him to keep the first mortgage alive to its apparent extent. If that was changed

for another under false pretenses, he is therefore in no situation to object to its restoration. It does not appear that the doctrine of marshalling securities was so familiar to him that he would prefer the old mortgage to remain alive on that account, to having a second mortgage on a single lot instead of on two. It is not surprising, therefore, that he appears to have been passive in the whole affair, which could only have appeared desirable to him on the theory that he knew how his security was to be given the semblance of legal priority. If he knew this, he was a direct party to the fraud. We incline to the belief that his name was used by the Eggemans without any desire of his own.

His bill was not filed until he was imbecile, if his daughter is to be believed, and nearly six years after the mortgage was given. It was then too late to take his testimony. The case stands upon the testimony of the mortgagors who show their own fraud when they attempt to give this mortgage priority. The impression we have received from the whole testimony is that the whole transaction was without any real consideration or equity, and merely colorable, and that the Harrow and Allen mortgage of December, 1866, should prevail over it.

The decree should be so modified as to be reversed and the bill dismissed as to Allen and Harrow with costs of both courts, and the decree to stand as against Bernard and Marie Eggeman, who have not appealed, with a recital and finding that the sale to be made under the decree shall be subject to the priority of the Harrow and Allen mortgage of December 6, 1866.

The other Justices concurred.