WARFIELD-PRATT-HOWELL COMPANY, Appellee, v. FRED RICHOU et al., Appellants.

**ACCORD AND SATISFACTION:** Insufficient Evidence. Record involving a trust bill of sale reviewed, and held wholly insufficient to show that the grantors were released from liability to their creditors by reason of the execution of such bill of sale.

**PRINCIPAL AND AGENT:** Agent Acting Outside Scope of Agency. An agent charged with the collection of the accounts of his principal may not bind his principal by accepting and executing a trusteeship for the benefit of creditors generally, even though his principal is one of the creditors.

*Appeal from Woodbury District Court.*—J. W. ANDERSON, Judge.

JANUARY 18, 1921.

ACTION against all defendants upon two promissory notes, and against the defendants Fred Richou and Charles Wolf, Jr., upon an account, and against Charles Wolf, Sr., upon a credit guaranty. Defendants appeal from the ruling and order of the court withdrawing certain issues from the jury and directing a verdict in plaintiff's favor.—*Affirmed.*

*O. D. Nickle* and *Kass Bros.,* for appellants.

*Sears, Snyder & Boughn,* for appellee.

PER CURIAM.—I. Plaintiff, a corporation engaged in the business, at Sioux City, Iowa, of selling groceries at wholesale,

on or about the 8th day of February, 1915, sold, at the agreed

1. ACCORD AND SATISFACTION: insufficient evidence.

price of $1,990, a small grocery and confectionery store, owned and operated by it in Sioux City, to the defendants Fred Richou and Charles Wolf, Jr., who thereafter carried on said business in the name of Richou & Wolf. Instead of payment in cash, Richou & Wolf executed a note to plaintiff for the above amount, signed also by Charles Wolf, Sr., who at the same time signed an instrument guaranteeing the payment of any sum or balance at any time due plaintiff from Richou & Wolf for merchandise to the amount of $700. The note and guaranty were renewed on or about February 8, 1916, and an additional note for one year's interest on the $1,990 note, amounting to $160.17, was executed by all of the parties and delivered to plaintiff. These are the notes and guaranty sued upon. The defendant Richou & Wolf filed a separate answer, admitting the execution of the notes, and that the itemized account attached to the petition was correct, but averring that, on or about the 27th day of February, 1917, they executed a trustee's bill of sale, conveying the stock and fixtures to F. J. Simmons, credit man for plaintiff, for the benefit of all the creditors of said firm, and that Simmons at the time represented and stated to the members thereof that, so far. as plaintiff was concerned, upon the execution of the bill of sale, the defendants would be released from their indebtedness to plaintiff, who would also obtain a complete release from all of the other creditors; that the stock and fixtures were promptly sold by Simmons for cash, and the proceeds divided pro rata among the creditors, paying 54.7 per cent of the amount due; and that, by reason thereof, defendants were released from further liability upon both notes and the account. The defendant Charles Wolf, Sr., also admitted the execution of the notes and written guaranty, but alleged that he was induced to sign the same by certain false representations made to him by Simmons; that he paid $1,000 to plaintiff, a few days after the renewal of the $1,990 note, with the agreement and understanding that same would be applied thereon; but that plaintiff, in disregard of such agreement, applied the same upon the merchandise account of Richou & Wolf, and he received no benefit therefrom; that, at the time of the execution of the trust bill of sale, he was

a creditor of Richou & Wolf, but that no part of the funds received by Simmons was paid to him.  By way of counterclaim, he demanded judgment against plaintiff for $1,300, the amount for which he alleges Richou & Wolf were indebted to him upon a promissory note.  He also pleaded accord and satisfaction.

Plaintiff, for answer to the counterclaim of Chas. Wolf, Sr., pleaded certain matters which it claimed estopped him from asserting any claim against the plaintiff on account of the failure of Simmons to include his claim in the distribution to creditors; but, as we find it unnecessary to consider this plea, we omit further reference thereto.

Plaintiff also denied the allegations of fraud which the defendant claimed induced him to sign the notes and guaranty, and denied that Simmons was authorized to make, or made, any representations or agreement as to the effect of the trust bill of sale.

Upon motion of counsel for plaintiff, the court withdrew all issues from the jury, except as to the application of the $1,000 alleged to have been paid upon the note, but applied by plaintiff on the merchandise account, and directed the jury to return a verdict against Charles Wolf, Sr., upon the written guaranty in the sum of $700, and against the other defendants for the full amount of the notes and account.  The jury found in favor of the plaintiff upon the issue submitted to it.  No evidence tending to show fraud in the inception of the notes of guaranty is shown in the record, and this issue was properly withdrawn from the jury.

Shortly prior to February 27, 1916, the Palmer Candy Co., a creditor of Richou & Wolf, commenced suit upon its account, and caused a writ of attachment to be levied upon the stock. At this time, Richou & Wolf had practically agreed upon a sale of the store for cash.  After the levy of the writ of attachment, Simmons suggested to Richou & Wolf that they execute a trust bill of sale to him for the benefit of their creditors, and that he would endeavor to secure a dismissal of the attachment proceedings, consummate the sale of the stock, and divide the proceeds pro rata among all the creditors of the firm.  The stock and fixtures were sold for $2,135.50, which, with sums collected on book accounts, enabled Simmons to distribute $2,915 among

the creditors, which was 57.4 per cent of the amount due. Plaintiff was the principal creditor, all the other creditors having only small accounts. All but four or five of the creditors receipted their accounts in full. The defendants claimed, as stated, that Simmons represented to the members of the defendant firm-that, so far as plaintiff was concerned, it would accept its pro rata share of whatever was realized from the sale of the stock and book accounts in full payment and satisfaction of the notes and account. The trust bill of sale contained the following provision:

"The trustee is hereby empowered to pay all public taxes assessed against said property, and being a lien on any or all of the same, together with the costs and expenses of holding, handling, and disposing of said property, which shall include a reasonable charge on the part of the trustee and his agents; and, after paying all of the expenses incurred in the handling of said estate and paying in full any claims that would be preferred and paid in full in a bankruptcy court, in the event that said estate should be administered in bankruptcy, the balance of the money shall be distributed pro rata, share and share alike, to all bonafide creditors having provable claims against the said Richou & Wolf, who accept under this trusteeship and agree to the terms thereof."

The above is the only provision therein relating to the distribution among the creditors of the proceeds of the sale. No other agreement is alleged or claimed by defendants. It is too manifest for discussion that the provision quoted above cannot be so construed as to operate as a release of the defendant from liability for the balance due upon the notes and account. To constitute a valid accord and satisfaction, the debtor must have paid an agreed amount in complete satisfaction of the debt, and the creditor must have so accepted the payment. *Rustler Realty Co. v. Swecker*, 134 Iowa 679. Testimony tending to show that Simmons talked with the members of defendant firm about getting releases from the smaller creditors was received, but the parties do not agree as to whether this conversation was before or after the execution of the trust bill of sale. We gather from the record that a judgment against Charles Wolf, Sr., upon the notes and trust agreement was collectible. It is claimed by

plaintiff that Simmons had no authority to represent to defend-
ants that the pro rata payment of the proceeds of the sale and
book accounts would be accepted or treated by it as a complete
settlement of the defendants' indebtedness, or to bind it by an
agreement to that effect. We need not pass upon this question.
Defendants do not claim that they were induced to execute the
bill of sale by fraud, or that Simmons did not act in good faith
in receiving and distributing the proceeds of the sale of the
stock and of the book accounts, except that the senior Wolf was
not included in the list of creditors. We think the evidence was
wholly insufficient to have justified the court in submitting the
issue of accord and satisfaction. The writing does not purport to
have been executed upon the part of either the defendants or
Simmons with the understanding or intention that the pro rata
payments were to discharge the indebtedness in full. No other
agreement was pleaded or proven. This issue was properly with-
drawn from the jury.

II. The sole remaining question requiring consideration
is that arising upon the counterclaim of Charles Wolf, Sr. Sim-
mons was, at the time of the transactions referred to, credit man
for plaintiff, and had charge of the collection
of its accounts. He did not, however, in making
distribution of the funds coming into his hands
2. PRINCIPAL AND
AGENT: agent
acting outside
scope of agency.
as trustee for the benefit of defendants' creditors, act in his
capacity as credit man or agent of the plaintiff. Whether
prompted to accept the conveyance of the stock and fixtures in
trust for the benefit of defendants' creditors, solely by a desire
to assist his principal in the collection of the amount due it,
and prevent the dissipation of the assets of the firm, or whether
he desired also to aid the defendants to make their assets go as
far as possible in satisfaction of their liabilities, is quite im-
material. In undertaking the task of selling the stock and dis-
tributing the funds coming into his hands among the creditors,
a list of which was furnished him by either Fred Richou or
Charles Wolf, Jr., he was not acting within the apparent scope
of his employment as credit man or agent for plaintiff. If he
failed to properly carry out his trust, we know of no theory upon
which the plaintiff would be liable to the injured party. This
issue was properly withdrawn from the jury.

No other questions raised or discussed merit special consideration. The judgment of the court below should be, and is,—*Affirmed.*