[No. 29070. *En Banc.* April 14, 1944.]

L. M. JONES *et al., Appellants,* v. L. W. CURTISS *et al., Respondents,* NEIL CURRIE *et al., Defendants.*[1]

[1]Reported in 147 P. (2d) 912.

*Frank M. Allyn,* for appellants.

*Walter C. Hinman,* for respondents.

GRADY, J.—This action was instituted by L. M. and Lizzie Jones, who sought recovery upon a promissory note for four hundred dollars, signed July 5, 1935, by the defendant Neil Currie, plaintiffs also asking for the foreclosure of a mortgage, executed by Mr. Currie to secure the note, covering a tract of real estate in King county. L. W. Curtiss and wife .were named as parties defendant, they being at that time the owners of the real estate covered by the mortgage. The action was tried to the court, and resulted in a judgment dismissing the action with prejudice, from which plaintiffs have appealed.

We shall refer to the various parties in the following manner: L. M. Jones and wife, the owners and holders of the note sued upon and the second mortgage securing it, as appellants; and L. W. Curtiss and wife, successors in interest of Neil Currie to the real estate covered by the second mortgage, as respondents.

The following situation is disclosed by the record in the case at bar: For some time prior to July 1, 1935, Neil Cur-

rie, a single man, was the owner of a rectangular tract of land 330 feet by 110 feet in size, located in the southeast quarter of the northwest quarter of section 27, township 24, north range 4 east, King county, Washington, the property being subject to a mortgage in the principal sum of eight hundred dollars and some accrued interest, in favor of appellants.

Mr. Currie procured a Home Owners' Loan Corporation loan upon this property, upon what showing we do not know. The appellants, June 26, 1935, in connection with Mr. Currie's loan referred to above, signed and placed with a title insurance company escrow instructions, and together therewith the mortgage above referred to and the note securing the same, a satisfaction of this mortgage, and certain other documents with which we are not concerned. By these documents, appellants authorized the escrow holder to deliver the file to the HOLC upon receipt for appellants' account of HOLC bonds and a small amount of cash, aggregating $565.86. On or about August 12th following, appellants signed and delivered a receipt in the following form:

"RECEIVED of Home Owners' Loan Corporation the following:

| | |
|---|---|
| Authorization No. 1635002 for delivery of Home Owners' Loan Corporation Bonds, par value......$ | 550.00 |
| Accrued interest from August, 1935, to August 12, 1935, date of closing above loan............... | .45 |
| Check No. 119903 ............................. | 15.41 |

*Amount accepted in full settlement* of the claim of the undersigned against the home property of above named applicant ............................$565.86"
(Italics ours.)

August 14th, the satisfaction of mortgage which appellants had placed in escrow was filed for record, and October 7, 1935, there was filed for record a mortgage dated July 5, 1935, from Neil Currie to appellants, covering the property referred to above, which secured a note for four hundred dollars, payable to the order of appellant L. M.

Jones in monthly instalments of not less than five dollars each, and bearing interest at the rate of five per cent per annum. The note contained an acceleration clause. November 9, 1938, Currie, for an express consideration of twenty-five dollars, quitclaimed the property to respondents. Apparently up to some time in June, 1935, Currie had made no payments on the principal of the note, and it was about that time application was made by Currie to the HOLC for a loan to be secured by a first mortgage on the property.

January 13, 1942, appellants filed their complaint, asking for foreclosure of the four-hundred-dollar mortgage. Neither Currie nor any person representing him appeared in the action. Respondents filed their answer, denying that Currie had executed the note and mortgage sued upon, further alleging that the same, if executed, was without consideration, and asking that the action be dismissed.

The trial court held that appellants' eight-hundred-dollar note referred to above was, under the facts and the law, paid by the delivery to appellants of HOLC bonds in the sum of five hundred fifty dollars, together with cash in the sum of $15.86; that the note sued upon in this action, representing the unpaid balance due from Currie to appellants upon the eight-hundred-dollar note, was without consideration; and that this action, based upon that note, should be dismissed.

The evidence is brief, only three witnesses having testified—appellant L. M. Jones, respondent L. W. Curtiss, and a representative of the title insurance company. No agent or representative of the HOLC testified, and no witness testified concerning the proceedings leading up to the HOLC loan. A considerable portion of the statement of facts is taken up by testimony and discussion between the court and counsel, concerning matters not relevant to this appeal. The representative of the title trust company testified only to facts concerning the carrying out of the escrow, in so far as appellants were concerned. The witness was not interrogated concerning any preliminary negotiations

between Currie and the HOLC, and the amount at which that corporation appraised the property, as preliminary to making the loan to Currie, nowhere appears in the record.

The HOLC was established by act of Congress passed June 13, 1933, chapter 64, § 1, 48 Stat. 128, found in 12 U. S. C. A., § 1461 *et seq.* In § 1463 of the last-given citation, the creation of the HOLC was authorized, the section providing that it should be an instrumentality of the United States and should be under the direction of, and operated by, the Federal Home Loan Bank Board "under such by-laws, rules and regulations as it may prescribe for the accomplishment of the purposes and intent of this section." The corporation was created, and rules and regulations were adopted. Thereafter for several years the board continued to make loans as authorized by the statute, including the loan here in question.

Reference to the rules of the HOLC discloses the following:

"The corporation may take up second mortgages or other inferior liens, provided the same is done along with the first mortgage and the total is within the Act. The corporation has no means of preventing the home owner from undertaking to pay any indebtedness he may owe over and above that refunded by the corporation and has no means of preventing his giving a second mortgage or other security for any such indebtedness. However, state managers are directed, as a matter of policy in dealing with home owners, to decline to conclude a refunding of a portion of the indebtedness against the home where the home owner is proposing to give a second mortgage for any excess indebtedness he may owe unless such second mortgage financing is so arranged that the home owner will have a reasonable probability of being able to carry his first mortgage to the corporation and the second mortgage indebtedness." (The foregoing was adopted September 8, 1933.)

"In the case of bond exchange loans, if the home owner owes more than 80 percent of the value of his premises he may remain indebted for that portion that the corporation cannot refund, provided the corporation secures a first lien, and he may secure the excess indebtedness with a second lien. However, such refunding will not be carried through unless such excess indebtedness is placed on a payment

basis so that the home owner will have a reasonable opportunity to pay the same and meet his obligations to this corporation. The corporation will not proceed to refund indebtedness for mortgagees who insist upon more in face value of bonds or who insist upon any other consideration (such as second mortgage, cash or other consideration) than the net amount owing to such mortgagee, together with accrued interest to date of exchange. The corporation will not participate in any refunding where, by any means, the indebtedness of the home owner is increased or the home owner is being called upon to pay more than his debt with interest." (The foregoing was adopted November 3, 1933.)

"(5) The corporation will refund indebtedness in eligible cases where the total amount it refunds is less than the total indebtedness and permit the mortgagor to remain indebted to the mortgagee for the remainder of his honest debt and permit the mortgagor to secure such excess indebtedness by a second mortgage or otherwise, but such refunding will not be consummated unless such excess indebtedness is placed on such terms that the mortgagor will have a reasonable opportunity to pay the same, together with his obligation to the corporation." (The foregoing was adopted November 4, 1933.)

"(1) If the home owners income is so reduced that he is unable to meet full amortization payments from the beginning on his obligation to the corporation, the second mortgage shall not require any principal payments prior to June 13, 1936, and payments thereafter shall be on a schedule which the home owner may reasonably be able to meet.

"(2) In all cases where the home owner is able to meet his full amortization payments to the corporation from the beginning and is able to make additional payments from the beginning on the second mortgage, then the second mortgage may be amortized from the beginning, provided the payments thereon are not in excess of what the home owner may be reasonably able to pay and at the same time keep his obligation to the corporation, making full amortization payments." (The foregoing was adopted January 9, 1934.)

"(2) Second Mortgages—Where the full amount of the indebtedness against the property cannot be refunded by the corporation, the mortgagee or other lien holder will be permitted to take a second mortgage or second deed of trust

if the amount of such second mortgage or deed of trust does not exceed the difference between the corporation's appraisal and the amount of the corporation's first mortgage. In no case shall the second trust or second mortgage to such other mortgagee or lien holder be in terms which would cause the mortgagor's payments to the corporation to be a hardship, or deprive the mortgagor of reasonable opportunity to pay such second mortgage or second trust." (The foregoing was adopted October 10, 1934.)

As was explained in *Home Owners' Loan Corp. v. Rawson*, 196 Wash. 548, 83 P. (2d) 765, also in many of the cases in which questions similar to the ones now before us were considered, and from the foregoing rules which we have quoted, it appears that the HOLC was created pursuant to the act of Congress to make loans to home owners who had become indebted and had encumbrances on their homes and were in danger of losing them because of their inability, owing to economic stress, to pay such indebtedness.

Two classes of loans were authorized. One of them was a refunding, or refinancing, loan for the purpose of paying the indebtedness of the borrower, particularly any previous loan that had been made upon the property and was secured by a mortgage. The other type of loan was known as a reconditioning loan and was made to enable the home owner to enlarge or improve his property. The social objective to be obtained was to save the home for the home owner, enlarge or improve the same, and enable him to repay the loan in instalments over a long period of time, according to his ability so to do.

It was not the policy of the HOLC to make loans as investments so as to profit by the interest earned, nor did it desire to acquire property by foreclosure of mortgages and make a profit by resales. If it appeared that the amount it could properly loan a particular home owner would not pay enough of his indebtedness so that he could repay the loan and his other debts, the loan would not be made unless he could secure a composition with his creditors and secure from them a full and complete release and discharge of their

claims upon their receiving out of the loan an agreed sum of money or its equivalent in bonds. In this way, the home owner would get a new start and have only the HOLC loan, secured by a mortgage, against his home. In some cases, if it appeared that the home owner had the apparent ability to repay his other debts, the HOLC would make the loan and not require the other creditors to release and discharge the unpaid balance of their claims and permit the giving of· a second mortgage on the property to secure the unpaid indebtedness. All of this was a matter of self-determination for the HOLC, and a secret agreement between the home owner and any creditor for a secondary lien on the home owner's property was not contemplated.

In this case, the HOLC required Currie to secure a full satisfaction of the debt he owed to appellants and to get a release of the mortgage securing it.

■ It has been contended that it must be assumed that the HOLC knew that appellants were going to receive a second mortgage on the property, as it would be presumed that the parties did not intend to do an unlawful act; and, if it were otherwise, the burden of proof was upon the respondents, in order to defeat the second mortgage, to show that the HOLC did not in fact know of the arrangement between Currie and appellants whereby such mortgage was to be or had been given. It seems to us that this is not a correct approach to the question.

When appellants introduced their note and second mortgage in evidence, with proof that the note was unpaid, they made a *prima facie* case. Then when the respondents introduced the receipt in evidence showing on its face that appellants had accepted $565.86 in bonds and money in full settlement of the original eight-hundred-dollar debt, it was established that the note in suit and the mortgage securing it were of no force and effect in that the original debt had been fully paid and extinguished. If appellants had claimed that the receipt did not have this effect, then the burden of going forward and showing a state of facts from which a legal conclusion would follow that such was the case would

have been shifted to them. This could have been done under the rule recognized in *McVicar v. Peters*, 12 Wn. (2d) 92, 120 P. (2d) 485, by showing that, when the loan was closed, the HOLC had knowledge of an agreement between the parties for the continued existence of the unpaid balance of the original debt and its security by a second mortgage. We think the respondents had the right to stand on the receipt until its legal effect, as appears from its face, was overthrown by the appellants. The record shows they made no attempt to do so.

The question of the validity of notes secured by second mortgages in cases like this one has been before many courts, and the great weight of authority is to the effect that they are invalid and cannot be enforced. Some of the leading cases are *McAllister v. Drapeau*, 14 Cal. (2d) 102, 92 P. (2d) 911, 125 A. L. R. 800 and note III, p. 810; *Anderson v. Nelson*, 110 Colo. 374, 134 P. (2d) 1053; *Smith v. Redwine*, 168 S. W. (2d) (Tenn. App.) 185; *Lavery v. Rizza*, 126 Conn. 132, 9 A. (2d) 819; *Meek v. Wilson*, 283 Mich. 679, 278 N. W. 731; *Murphy v. Omaha Loan & Bldg. Ass'n*, 141 Neb. 230, 3 N. W. (2d) 403. Other cases are cited in 5 John Marshall Law Quarterly, p. 373; Notes, 110 A. L. R. 250, and 121 A. L. R. 119; *McVicar v. Peters*, 12 Wn. (2d) 92, 120 P. (2d) 485, *supra.* Many other cases might be cited here, but we deem it unnecessary as they are included in the above-cited authorities.

The only cases we have found to the contrary are from the intermediate courts and the state of Arkansas, but they are so greatly in the minority that they should not be followed if preponderant judicial thought over a long period of time is to be any guide to us in deciding a case of first impression.

In their treatment of the question involved here, the courts view the validity of a secret collateral agreement between the borrower and a creditor, situated as the appellant was, to receive a second mortgage on the same property securing any part of the original debt, from different standpoints:

(1) It was against public policy in that it violated the spirit of the act relating to the HOLC, which was considered to be for the relief of a home owner in financial distress, and a second mortgage adds a burden upon him which would diminish his ability to repay the HOLC loan. (2) It operated as a fraud upon the HOLC, as it thus would not have had an opportunity to elect whether it would make the loan if it were the intention to keep intact any part of the original debt and secure it by a second mortgage. (3) The execution and delivery of a written consent to take a lesser sum than the original debt out of the proceeds of the loan in full settlement thereof would, when received, result in an accord and satisfaction, and any note or second mortgage evidencing or securing any part of the original debt would be without consideration.

Whichever line of reasoning is adopted, the result is the same, and, from the great weight of authority on the subject, the following is the rule and the exception thereto to be applied:

■■ Where a secured creditor agrees wholly to relinquish and release his claim against a debtor in consideration of receiving a specified sum from an HOLC loan to the debtor, he cannot, as a part of the same transaction, make a secret arrangement with his debtor to keep the indebtedness intact in whole or in part and stand by and permit the loan to be closed, become a beneficiary, and later seek to realize upon his claim. But if he does make such an arrangement with his debtor with the full knowledge of the HOLC, and it closes the loan, then the creditor, not having perpetrated any constructive fraud and there having been no accord and satisfaction, can maintain an action to collect the indebtedness still owing him.

The reasons upon which the exception to the rule are based are that, if the HOLC knows when it closes a loan that the borrower and his creditor desire to continue the unpaid balance of the indebtedness in force and secure it by a second mortgage on the property, it then has the opportunity to determine whether its policy in making the

loan can be carried out and if the borrower will probably be able to meet both obligations, and it can then act accordingly. If it then makes a loan, there is no question of public policy involved and no constructive fraud perpetrated. There would be no accord and satisfaction between the borrower and creditor because they intend otherwise, and the balance of the original debt would not be extinguished, but would remain in force.

The factual situation here presents substantially the converse of that found in *McVicar v. Peters, supra,* and we think the principles of law referred to in that case are applicable here.

There the creditor, situated as is appellant here, did not receive any HOLC bonds in satisfaction of the debt owing to him. He did not agree to relinquish the indebtedness. The arrangement whereby the indebtedness would be kept intact notwithstanding the HOLC loan and that the creditor would ultimately receive the balance owing to him, was known to the agents of the HOLC when the loan was made and closed; and it was held by this court that, under the facts as shown by the record, such an arrangement was not invalid.

But here the situation is entirely different. The appellants received a substantial part of the indebtedness owing to them. It is a proper inference to draw that, inasmuch as they had received nothing on the debt, they, appellants, were willing to encourage the making of the HOLC loan so that as much as possible of the debt could be liquidated out of its proceeds; and, on the other hand, the HOLC, in conformity with its general policy in making a loan, desired to have all of the secured indebtedness against the property fully liquidated, to the end that the borrower would be better able to repay such loan as it came due; and, therefore, it was the intention of all parties that, when the appellants received the HOLC bonds and cash, in the aggregate of $565.86, the original debt would be entirely liquidated.

The *McVicar v. Peters* case, *supra,* is persuasive because,

in order to reach the conclusion that we did, we had first to recognize and sanction the rules announced by the courts in the cases therein cited before we could apply to the facts of that case the exception to the rule.

The judgment is affirmed.

MILLARD, BLAKE, ROBINSON, and MALLERY, JJ., concur.

BEALS, J. (dissenting)—The facts are stated in the majority opinion, which also includes the pertinent portions of the HOLC rules and regulations. A considerable portion of the statement of facts is composed of testimony and discussion between court and counsel concerning matters not relevant to this appeal. Only three witnesses testified—appellant L. M. Jones (to whom I shall refer as appellant), respondent L. W. Curtiss, and a representative of the title insurance company which had acted as holder of the escrow. As stated by the majority, no agent or representative of the HOLC testified, and no witness testified concerning the proceedings leading up to the making of the HOLC loan. The representative of the trust company testified only to facts concerning the carrying out of the escrow, in so far as appellant was concerned. The witness was not interrogated concerning any preliminary negotiations between Mr. Currie and the HOLC, and the amount at which that corporation appraised the property prior to making the loan to Mr. Currie is not disclosed by the record.

The trial court held that appellant's eight hundred dollar note and accrued interest thereon, as described in the majority opinion, was, under the facts and the law, paid by the delivery to appellant of HOLC bonds of the par value of five hundred fifty dollars, together with a small amount of cash, and that the note sued upon in this action, in the amount of four hundred dollars, covering the unpaid balance due from Currie to appellant upon the original eight hundred dollar note, was without consideration, and that this action based upon that note should be dismissed.

The trial court, after citing the case of *Home Owners' Loan Corp. v. Rawson*, 196 Wash. 548, 83 P. (2d) 765, con-

sidered the powers and authority of the HOLC and its general policy of desiring to clear the mortgaged property from all existing liens before making a loan. Of course, if the note sued upon herein was invalid, the mortgage securing the same could not be foreclosed.

The HOLC was established by act of Congress, passed June 13, 1933, c. 64, § 1, 48 Stat. 128, found in 12 U. S. C. A., § 1461 *et seq.* In § 1463 of the last citation, the creation of the HOLC was authorized, the section providing that it should be an instrumentality of the United States, and should be under the direction of and operated by the Federal Home Loan Bank Board "under such bylaws, rules and regulations as it may prescribe for the accomplishment of the purposes and intent of this section." The corporation was created, and rules and regulations were adopted. Thereafter for several years the board continued to make loans as authorized by the statute, including the loan here in question.

It appears from the HOLC regulations quoted by the majority that a second mortgage might be consented to by the HOLC, provided the total of the first and second mortgages did not exceed the appraised value of the property, subject to a showing that the terms of the second mortgage were within the means of the mortgagor and was given to secure an honest debt. Certainly appellant's mortgage, payable at five dollars a month with interest at five per cent per annum, afforded all reasonable opportunity for payment. It is nowhere even suggested that the amount of the note in suit was not honestly due to appellant from Currie.

As the record before us does not disclose the appraised value of the property as made by the HOLC, and as the rules of that corporation apparently contemplated that a second mortgage would not be objectionable under the conditions stated in the rules, one condition being that the total of the two mortgages be less than the appraised value of the property, it is my opinion that the transaction between Mr. Currie and appellant should be presumed to have complied with the rules and regulations, rather than to have vio-

lated them. The records of the HOLC concerning this loan were undoubtedly available to respondent, and, as they were not offered in evidence, the presumption is that they would not have supported his contention that the mortgage was executed in violation of some regulation of the HOLC.

Many authorities support the proposition that a lien upon real estate sought to be established in violation of the rules and regulations of the HOLC is unenforcible. Assuming for the present, for the purposes of argument, that these authorities should be followed, they go no further than to hold that, when the record shows that such a second mortgage as that herein sought to be foreclosed was executed without the knowledge of any representative of the HOLC, and in violation of its regulations, it is not enforcible. The HOLC is not a party to, nor is it anywise concerned with, this litigation. In the case at bar, there is absolutely no evidence concerning knowledge or lack of knowledge on the part of the agents of the HOLC concerning the note and mortgage which are the subject matter of this action. The rules and regulations quoted clearly show that, in certain cases, one obtaining an HOLC loan may subject his property to a second mortgage which secures an "honest debt." Such a mortgage was permissible if securing a bona fide indebtedness, under several conditions.

The majority refer to "the rule recognized" in the case of *McVicar v. Peters*, 12 Wn. (2d) 92, 120 P. (2d) 485. That case has little, if any, bearing upon the situation here presented. In the case cited, it was properly held that a mortgage which was junior to a mortgage to the HOLC was subject to foreclosure, it appearing that the agents of the corporation knew at the time of the transaction that the second mortgage was made. Naturally, in the course of the opinion, the court referred to the decisions relied upon herein by respondent, which were cited by the respondent in the *McVicar* case, and held that those authorities were not controlling, because in the case then before the court it appeared that the agent of the HOLC had full information concerning the execution of the second mortgage. The

court was not called upon to do more than distinguish the case then before us from the authorities upon which the respondent in that case relied. It is true, as argued by respondent, that this case is substantially the converse of the situation disclosed in the *McVicar* case, but in that case no rule of law was laid down by this court which is to the least extent controlling here. Any intimation that under different facts a different conclusion might have been reached would be mere dictum. Now that a question has come before us involving a situation entirely different from that presented by the record in the *McVicar* case, this court is perfectly free to determine the law applicable to the facts of this case, as disclosed by the record, being nowise bound by our prior decision. As stated in the opinion in the *McVicar* case, the cases here cited and relied upon by respondent were in that case "of little or no value," as the record then before the court disclosed a state of facts entirely different from those disclosed by the record in the case at bar.

The mortgagor, Neil Currie, did not appear in the action; from the record it appears that his whereabouts were unknown to appellant, and that in all probability he was dead; he was never personally served with process, and no relief was asked save the foreclosure of the mortgage. The only evidence in the record concerning the circumstances under which the second mortgage was executed is found in the testimony of appellant, who, after testifying on his own behalf, was called by respondent as an adverse witness. In the course of appellant's examination by respondent's counsel, the following occurred:

"Q. At the time you took those bonds you knew how much bonds you were going to get, didn't you? A. Yes. Q. And for the purpose of getting those bonds you executed this satisfaction of mortgage, did you not?—the $800.00 mortgage we are talking about, the original mortgage the judge wants us to call it. A. Will you state the question again? Q. I say at that time for the purpose of getting those bonds you executed this satisfaction of this mortgage, the original mortgage of $800.00? A. With the understanding that I take a second back."

Appellant directly testified that he executed the satisfaction of the eight hundred dollar mortgage with the understanding that he should receive from Currie, the mortgagor, a second mortgage covering the unpaid balance due appellant upon the eight hundred dollar mortgage.

The situation before the trial court, then, was as follows: Appellant was suing upon the second note executed in his favor by Currie, and also asking to foreclose the mortgage securing the note. The burden rested upon appellant to prove the execution and delivery of the note and mortgage. This burden without question appellant met. The burden then shifted to respondent, under the latter's affirmative defense, to prove that appellant's note and mortgage were void, which burden respondent attempted to meet by the evidence introduced on his behalf showing the execution of the note and mortgage by Currie in favor of the HOLC and in connection with this loan, the receipt executed by appellant, together with the satisfaction of the eight hundred dollar mortgage which appellant also executed. It appearing from undisputed evidence that appellant's eight hundred dollar note had not been paid in full by the amount turned over to appellant by the escrow holder, being a portion of the proceeds of the HOLC loan, the burden also rested upon respondent to show that the transaction fell without the general rule that acceptance of a partial payment on a liquidated account does not constitute a satisfaction of the entire debt. There is nothing in the record which even remotely suggests fraud on appellant's part.

Appellant explained the circumstances under which he executed the receipt and satisfaction of the mortgage. His testimony is undisputed. Unless it be held that for some reason based upon the rules and regulations of the HOLC it was unlawful for appellant to accept a new note and mortgage for the balance of his original debt, which balance it is not disputed was actually due appellant, he should recover in this action.

The facts in the case at bar are simple. Mr. Currie owned the property subject to the mortgage to appellant. That

mortgage represented a bona fide indebtedness; there is no suggestion to the contrary. As the result of the HOLC transaction, appellant received a substantial portion, but not all, of the amount due him. He signed a receipt for this payment, and he received the money. He executed and delivered a satisfaction of his mortgage, thereby according priority to the mortgage to the HOLC. The HOLC was not injured by the mortgage in suit; its mortgage is still a perfectly good and valid first lien upon the property. The mortgagor, Currie, never complained of the matter, and is not now complaining. The point is raised by Currie's grantee, who, several years later, bought the property for a stated consideration of twenty-five dollars, with notice of appellant's mortgage. The record shows beyond any question that the amount of the mortgage which appellant is seeking to foreclose is justly due him.

Authorities relied upon by the majority support the proposition that second mortgages executed in violation of the rules and regulations of the HOLC after the acceptance of a first mortgage by that corporation, are unenforcible. In my opinion, these authorities are not here in point, as the law presumes legality rather than illegality. The fact that Currie was honestly indebted to appellant is not questioned, and the record contains not one word of evidence even suggesting that the mortgage herein sued upon, together with the HOLC mortgage, exceeded the appraised value of the property as established by the HOLC. Neither does the record show that the representatives of the HOLC were not fully advised concerning the execution of the note and mortgage sued upon. For all we know, they have consented to the execution of the note and mortgage.

In view of the total absence of evidence concerning these matters, it is my opinion that the record does not support any holding that the note and mortgage sued upon in any wise violated or contravened the rules and regulations of the HOLC, as set forth in the opinion of the majority.

It is stated in the majority opinion that secret agreements between the home owner and the creditor for a secondary

loan on the home owner's property were not contemplated by the HOLC. The rules and regulations of the latter corporation show that such agreements were contemplated under certain circumstances. Probably it was not anticipated that such arrangements should be made without disclosure of the facts to the agents of the HOLC, but, in the case at bar, there is not a scintilla of evidence to the effect that the agents of the HOLC did not know all about appellant's note and mortgage, which are the subject matter of this action. Assuming that these facts were not disclosed to the HOLC, nevertheless that fact alone would not justify a judicial holding that appellant's note is void, if, under the regulations of the HOLC, the transaction would have been consented to had approval been requested. Such a holding would be exalting the shadow above the substance to an unprecedented degree.

Before appellant's note can be held void, it must first be assumed that the representatives of the HOLC had no information concerning the same, and, second, that by the transaction the regulations of the HOLC were violated. As the law presumes legality rather than illegality, it seems to me clear that in the case at bar neither of these presumptions is entitled to prevail.

The majority hold that, when respondents introduced in evidence the receipt set forth in the opinion, whereby appellant accepted $565.86 in money and bonds in full settlement of his eight hundred dollar claim, it was established that the note in suit became of no force and effect, and that, if appellant asserted that the receipt did not have this effect, the burden of going forward rested upon him, but that he could have met this burden by showing that the HOLC had knowledge of the execution of the note and mortgage in suit. On the contrary, the burden rested upon respondent to show that by the transaction some rule or regulation of the HOLC had been violated.

In my opinion, when appellant testified, as above shown, that he accepted the money and bonds from the HOLC with the understanding that he receive a second mortgage, he

explained the receipt and satisfaction· of mortgage which he had given, and met the burden of proof which rested upon him. After he met that burden he was not required to show that the HOLC had knowledge of the agreement between appellant and Currie. The attempt by the latter to pay to appellant the money due him was not illegal. It was an honest debt, and a moral obligation rested upon Currie to pay it. If any evidence had been introduced even tending to prove that the HOLC had not known of this transaction, a stronger case on respondents' behalf would be presented, but there is no such evidence in the record. It affirmatively appears that the money represented by the note sued on was due appellant from Currie. As to the transaction with the HOLC, in the absence of all evidence, the presumption that the rules of the corporation were complied with should prevail.

Appellant's receipt, quoted in the majority opinion, does not preclude recovery in this action. Appellant, by an agreement with Currie, which was manifestly to the latter's advantage, had conditionally accepted Currie's note for four hundred dollars, secured by the mortgage, as payment on account. The note, of course, would have been void if the loan from the HOLC had not been made. Appellant, then, accepted the bonds and cash, being a portion of the proceeds of the HOLC loan, and gave the receipt referred to in full of "the claim" (of course the eight hundred dollar mortgage) against the property. The burden rested upon respondent to show that the transaction was otherwise construed by the parties, or that it was obnoxious to any legal principle. The transaction would doubtless have been unassailable if Currie had given his note only, or secured the note by a mortgage on other property. I see no basis in law for holding this mortgage void.

In the case of *New England Mortgage Security Co. v. Hirsch Bros.*, 96 Ala. 232, 11 So. 63, the supreme court of Alabama considered questions arising between a mortgagee in appellant's position and another mortgagee whose mortgage became a lien upon the property prior to the recording

of the second mortgage given to the person who originally held the first mortgage. In discussing the effect of the execution of a receipt for the payment of the debt secured by the first mortgage and the satisfaction of that mortgage, the court said:

"And whether the taking of the second mortgage is a payment of the first depends upon the intention of the parties. When no receipt is given for the amount secured by the first mortgage, and no release thereof is executed, the presumption is that the later notes and mortgage were not intended to pay and discharge the earlier. When such receipt is given or release executed, the contrary presumption obtains. But this is only a *prima facie* presumption. It may be met and overturned, whatever the form of the paper writing relied on as evidencing payment and discharge, by proof of an intent of the parties that the receipt or release was not to operate according to its expressed terms, but was executed for other purpose than to show the satisfaction of the mortgage debt and release of the mortgage lien."

In the later case of *Bank of Oakman v. Thompson,* 224 Ala. 87, 139 So. 238, the supreme court of Alabama said:

"Along with many other courts, we have followed the principle that whether the taking of the second mortgage is a payment of the first depends upon the intention of the parties, and, where the purpose is simply a renewal and extension of the old debt, the second mortgage will not constitute a payment of the first, though it may have been so marked and surrendered to the mortgagor."

In the case of *United States v. Grover,* 227 Fed. 181, Van Fleet, district judge, said:

"It is well settled that, where a mortgage is renewed before maturity, or the evidence of the debt is changed by the substitution of new notes therefor, or such portion thereof as may remain unpaid, the lien of the mortgage is not lost or affected, unless the circumstances of the transaction disclose clearly that it was the intention of the parties to create a new security and treat the old as cancelled. *Dingman v. Randall,* 13 Cal. 512; *Bond v. Liverpool Insurance Co.,* 106 Ill. 654; *Security Co. v. Hirsch,* 96 Ala. 232, 11 South. 63. And the fact of entering satisfaction of the existing mortgage when taking a new one, if the

latter be designed by the parties as a mere continuation of the first, when the two acts are a part of the same transaction, does not operate as an extinguishment of the mortgage, but will be regarded as a renewal thereof, and not as abandoning the lien and letting in intervening equities. *Dillon v. Byrne,* 5 Cal. 455; *Roberts v. Doan,* 180 Ill. 187, 54 N. E. 207; *Higman v. Humes,* 127 Ala. 404, 30 South. 733; *Eggeman v. Eggeman,* 37 Mich. 436.

"So long as the same debt, or some part of it, subsists, the presumption ordinarily is that the new mortgage is intended as a renewal of the old, and a continuance of the same security."

Of course, in the case at bar, no question is presented concerning any intervening lien upon the land, appellant admitting that his mortgage is subordinate to that in favor of the HOLC.

It seems to me clear that appellant met any burden which rested upon him to show the validity of his claim against the property as against respondents' claim as owner by virtue of the conveyance from Currie. In so far as the burden of proof upon this phase of the case is concerned, the fact that the mortgage which intervened between appellant's two mortgages was made to the HOLC rather than to a private party, is immaterial. Because of this fact, no greater burden rested upon appellant to show that his eight hundred dollar mortgage was in fact not satisfied in full by the payment which appellant received. The fact that the HOLC is a governmental agency and has made many rules and regulations concerning its loans does not affect this phase of the case, to wit, the burden of proof.

The matter of any supposed violation of the HOLC rules and regulations by appellant in accepting his note and mortgage, and by Currie in executing the note and mortgage, is a different question. As to this phase of the case, as above stated, there is not a suggestion of evidence in the record that the execution of the note and mortgage in suit in any respect violated the rules and regulations referred to, which are contained at length in the majority opinion. They show that under different sets of circum-

stances a second mortgage could be given in entire conformity with such rules. In the absence of evidence at least indicating that appellant's note and mortgage were executed in violation of these rules, it seems to me clear that the presumption is that there was no violation thereof, and that appellant's note and mortgage are valid, and that the mortgage should be foreclosed.

It has been suggested that, in so far as appellant is concerned, the transaction with the HOLC constituted an accord and satisfaction. The rule is that to constitute a binding accord and satisfaction, the debtor must have paid an agreed amount in complete satisfaction of the debt, and the creditor must have so accepted the payment. *Ingram v. Sauset*, 121 Wash. 444, 209 Pac. 699, 34 A. L. R. 1031; *Inman v. Roche Fruit Co.*, 162 Wash. 235, 298 Pac. 342; *Bellingham Securities Syndicate v. Bellingham Coal Mines*, 13 Wn. (2d) 370, 125 P. (2d) 668; *Warfield-Pratt-Howell Co. v. Richou*, 190 Iowa 809, 180 N. W. 866. From the record in this case, it clearly appears that no accord and satisfaction was accomplished.

As above stated, many judicial decisions support the proposition that a mortgage such as appellant is here seeking to foreclose, made to secure a balance due upon a mortgage paid in part from the proceeds of an HOLC loan, may not be enforced.

In the case of *McAllister v. Drapeau* (Cal. App.), 85 P. (2d) 523, the district court of appeal, second district, division 1, state of California, had occasion to pass upon a question similar to that here presented. The court of appeal unanimously held that such a mortgage as appellant's made under practically the same circumstances, save that in that case it appeared that the mortgage was executed without the knowledge of the HOLC, was a valid obligation of the mortgagor and should be enforced. I am convinced that the correct rule is laid down in the opinion cited. The case was reviewed by the supreme court of California *(McAllister v. Drapeau*, 14 Cal. (2d) 102, 92 P. (2d) 911, 125 A. L. R. 800), the supreme court unanimously reaching a contrary conclusion, without referring to the

opinion of the district court of appeal, and held the mortgage void. Of course, the opinion of the district court is without authority as a precedent, having been reversed by the higher tribunal.

Prior to the rendition of the decision of the supreme court of California referred to, the supreme court of Arkansas, in the case of *Sirman v. Sloss Realty Co.,* 198 Ark. 534, 129 S. W. (2d) 602, considered a similar question, and held that the second mortgage constituted a valid obligation and should be foreclosed.

For my part, I am convinced that the decisions relied on by respondent, laying down the rule embodied in the opinion of the majority, are unsound, based upon false premises, and should not be followed.

Generally speaking, these cases are based upon three propositions: First, that of public policy; second, fraud; and third, accord and satisfaction, and want of consideration for such a mortgage as appellant's.

As to the matter of alleged public policy, it seems to me that such a supposed policy has been built up by the courts upon an utterly unsubstantial foundation. In the first place, public policies, outside of those which rest upon constitutional or statutory foundations, are extremely indefinite and nebulous doctrines, well described by the supreme court of Arkansas, in the case of *Sirman v. Sloss Realty Co., supra,* as "a vague phantasmagoria of legal concepts, when an effort is made to give the term meaning aside from the consideration of constitution and statutes."

The doctrine that mortgages such as that owned by appellant are against public policy, and that the courts for one reason or another are justified in holding them void, was, so far as I have been able to ascertain, first laid down by the municipal court of New York, borough of Brooklyn, February 19, 1935, in the case of *Jessewich v. Abbene,* 154 Misc. 768, 277 N. Y. Supp. 599. May 12, 1936, the supreme court of Oneida county, in the case of *First Citizens Bank & Trust Co. v. Speaker,* 159 Misc. 427, 287 N. Y. Supp. 831, followed the same rule. The decision of the supreme court of North Dakota, in the case of *Federal Land Bank*

*v. Koslofsky,* 67 N. D. 322, 271 N. W. 907, is considered an authority to the same effect, as is the case of *Cook v. Donner,* 145 Kan. 674, 66 P. (2d) 587, 110 A. L. R. 244. In these cases and other cases cited by respondent, the courts have built up the so-called public policy relied upon herein by respondent, and have, in my opinion, extended the rules and regulations promulgated by the governing board of the HOLC beyond any reasonable construction thereof.

To become a binding public policy, the policy announced must concern some manifest public good, recognized by some clearly defined authority which has the right to promulgate public policies. Doubtless the benevolent policy back of HOLC loans was to relieve debtors to some extent from financial embarrassment which endangered their homes; but, in my opinion, the theory has been extended beyond reasonable limits when it is used to relieve such a debtor of an honest debt, and, in this case, apparently against his own volition.

A public policy to be established by the courts should be one reasonably adapted to fill its alleged purpose. Admittedly, a person receiving an HOLC loan may, a moment after the transaction has been closed, mortgage the property to anyone for any amount; he can subject it to liens; he can give it away. Under the supposed public policy followed by the cases referred to, it would seem that the only person to whom Mr. Currie could not have mortgaged the property was appellant, to whom he was honestly indebted.

It is also true that, if the HOLC was determined to clear Mr. Currie's title to his property, in carrying out the public policy relied upon, it would have been a very simple matter to demand assignments from Currie's creditors, including appellant. The debts then would have been absolutely extinguished by the corporation's satisfaction thereof.

In the case at bar, there is no proper element of public policy involved; there is absolutely no suggestion of fraud; and the record does not support a holding that an accord and satisfaction was accomplished, which bars appellant's claim.

For the reasons stated, I dissent from the conclusion reached by the majority. The judgment of the superior court should be reversed and the cause remanded, with instructions to enter judgment in appellant's favor.

SIMPSON, C. J., JEFFERS, and STEINERT, JJ., concur with BEALS, J.