SOUTHERN REEF FISHERIES, a Florida General Partnership comprised of John E. Turregano, Betty M. Turregano, S.T. Miller, Martha S. Miller, Arnold D. Barr and Beverly Jo Barr, Plaintiffs-Appellants,

and

Borg-Warner Acceptance Corporation, Intervening Plaintiff-Appellee,

v.

O/S BROADFIRE LEADER, etc., in rem, and Broadfire International, Inc., in personam, Defendants-Appellees.

No. 85–3254.

United States Court of Appeals, Eleventh Circuit.

April 21, 1986.

Nathaniel G.W. Pieper, Tampa, Fla., for plaintiffs-appellants.

Edward F. Gerace, Tampa, Fla., for defendants-appellees.

Before HILL, Circuit Judge, TUTTLE and HENDERSON,[*] Senior Circuit Judges.

HILL, Circuit Judge:

## FACTS

On April 27, 1982, the owner of the O/S BROADFIRE LEADER executed a preferred ship mortgage in favor of Borg-Warner Acceptance Corp. ("Borg-Warner") in the principal amount of $107,763.80 ("Borg-Warner Mortgage 2"), which replaced and increased the principal amount of an earlier mortgage. Borg-Warner Mortgage 2 was endorsed on the vessel's General Abstract of Title and recorded on April 29, 1982.

On July 1, 1982, the owner executed a second preferred ship mortgage in favor of appellant, Southern Reef Fisheries, in the principal amount of $100,000. That mortgage was received for record by the Coast Guard on September 2, 1982, but was not endorsed and recorded until February 8, 1983.

On December 30, 1982, the owner executed another preferred ship mortgage in favor of Borg-Warner ("Borg-Warner Mortgage 3"). Borg-Warner Mortgage 2 was released and Borg-Warner Mortgage 3 was endorsed and recorded on February 8, 1983, a few minutes after the Southern Reef Fisheries mortgage. The parties dis-

---

[*] See Rule 3(b) Rules of the U.S. Court of Appeals    for the Eleventh Circuit.

pute the principal amount of Borg-Warner Mortgage 3. Appellant claims the amount is $192,443.16 because that figure appears at the top of the mortgage document and the Coast Guard entered that amount on the General Abstract of Title as "consideration or amount and discharge amount." Borg-Warner contends that Borg-Warner Mortgage 3 secured the principal amount of $106,557.52, as indicated in the body of the mortgage instrument and the accompanying note and security agreement. In answer to appellant's claim, Borg-Warner asserts that the $192,443.16 figure at the top of the mortgage represents the total pay-out over the life of the mortgage, including both principal and interest. Aside from their principal amounts, Borg-Warner Mortgages 2 and 3 differed in the interest rate charged (2% over prime on Borg-Warner Mortgage 2 versus 18.5% on Borg-Warner Mortgage 3) and in their maturity dates (April 22 or May 1, 1989 for Borg-Warner Mortgage 2 versus February 14, 1990 for Borg-Warner Mortgage 3).

Appellant filed suit to foreclose its preferred ship mortgage, seeking sale of the vessel to satisfy appellant's lien plus interest, costs and reasonable attorneys' fees, as well as a personal judgment against the owner. Borg-Warner intervened to seek similar relief. On April 10, 1984, the district court granted Borg-Warner's motion for summary judgment, finding "that the mortgages of Borg-Warner Acceptance Corp. cover the same debt and are, in fact, a renewal and continuation with the same security, that Borg-Warner has the first preferred ship's mortgage and priority over Southern Reef Fisheries." (R1–25–76). The vessel was thereafter sold at interlocutory sale to Borg-Warner for $75,000. On March 28, 1985, the court entered final judgment against the *in rem* defendant O/S BROADFIRE LEADER on behalf of Borg-Warner in the amount of $160,324.67, and on behalf of Southern Reef Fisheries in the amount of $92,762.82, according to the plaintiffs' stipulated claims.

## DISCUSSION

■ The issue is whether the district court erred in granting summary judgment

in favor of Borg-Warner based on its conclusion that Borg-Warner Mortgage 3 was a renewal and continuation of Borg-Warner Mortgage 2. The rule in this circuit regarding renewal mortgages is clear:

> The accepted rule is that unless a contrary intention of the parties clearly appears, the execution and delivery of a new mortgage in renewal of a former one, even though accompanied by a formal satisfaction and discharge of the initial mortgage, does not have the effect of extinguishing the priority which the initial mortgage carries. The subsequent mortgage given in renewal is prior to liens which arose or would otherwise have come into being during the period of the initial mortgage. A comprehensive annotation states that it is the general rule that "where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless the circumstances of the transaction indicate this to have been his intention...." This is especially so where the junior lien came into being (as here) during the currency of the prior mortgage, so that attributing to the renewal mortgage the priority of the initial one leaves the junior lienor in exactly the same position had no renewal mortgage been executed.

*Merchants & Marine Bank v. The T.E. Welles*, 289 F.2d 188, 194 (5th Cir.1961) (citations omitted).

■ Nonetheless, appellant claims that summary judgment was inappropriate because there was a genuine issue of material fact as to whether Borg-Warner Mortgage 3 was a renewal of Borg-Warner Mortgage 2 or security for new credit. In determining whether summary judgment was appropriate, we review the evidence and all factual inferences therefrom in the light most favorable to, and resolve all reasonable doubts in favor of, the party opposing summary judgment. *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985).

Appellant's argument is based on the alleged discrepancy in principal amounts, the change in interest rate and maturity date and its allegations that the principal of the Borg-Warner Mortgage 2 debt was reduced by $11,546.10 before Borg-Warner Mortgage 3 was executed. Borg-Warner supported its motion for summary judgment with the affidavit of D.D. Cookson, Borg-Warner branch manager. The body of Borg-Warner Mortgage 3, the terms of the note and security agreement and the Cookson affidavit indicate that the principal amount of Borg-Warner Mortgage 3 was $106,557.52, and that this mortgage was executed to replace Borg-Warner Mortgage 2 which was then in default. Appellant did not submit any affidavits in opposition to summary judgment, relying solely on the "discrepancy" in amounts on the face of the mortgage. The figures in the mortgage document are not, however, contradictory; the note and mortgage indicate that $192,443.16 is the sum of the principal and interest payments due over the loan term.

With its motion for rehearing, appellant submitted exhibits from Mr. Cookson's deposition which it claimed demonstrated that the owner made principal payments of $11,-546.10 against Borg-Warner Mortgage 2. These exhibits, however, indicate that several of these payments were in arrears and at least four months' unpaid interest had accrued. To counter this claim, Borg-Warner submitted the affidavit of Elaine Baird, another Borg-Warner employee, who stated that the past due amounts were never paid, Borg-Warner Mortgage 3 did not include any future advances and the change to a fixed rate of interest merely stabilized the floating rate at the then current level. Appellant argues that the possibility that payments were not properly credited to the principal of Borg-Warner Mortgage 2 requires a trial on the issue of priority. Viewed most favorably to appellant, the Cookson deposition exhibits do not support an inference that the principal of Borg-Warner Mortgage 2 was reduced by $11,-500 and that Borg-Warner Mortgage 3 included future advances. Even if we assume that a small portion of the Borg-War-

ner Mortgage 2 debt had been paid, " 'so long as the same debt, or some part of it, subsists, the presumption ordinarily is that the new mortgage is intended as a renewal of the old, and the continuance of the same security.' " *Barnouw v. S.S. Ozark*, 304 F.2d 717, 723 (5th Cir.), *cert. denied*, 371 U.S. 923, 83 S.Ct. 291, 9 L.Ed.2d 231 (1962) (quoting *Jones v. Curtiss*, 20 Wash.2d 470, 147 P.2d 912, 921 (1944). Since the outstanding principal amount of Borg-Warner Mortgage 3 greatly exceeded the proceeds from the sale of the vessel, appellant would not have had priority in these proceeds even if he had proved this claim.

In addition, appellant claims Borg-Warner Mortgage 3 was not entitled to preferred status because the affidavit of good faith required by 46 U.S.C. § 922(a)(3) (Supp. I 1983) was false. The affidavit accompanying Borg-Warner Mortgage 3 stated that there were no other liens or encumbrances outstanding against the vessel. Appellant argues that Borg-Warner had constructive knowledge of the Southern Reef Fisheries mortgage because the Coast Guard had received it, even though it was not recorded for several months, but does not present any evidence that Borg-Warner had actual knowledge of this mortgage. Even if Borg-Warner knew of the Southern Reef Fisheries mortgage, we agree with the Fifth Circuit that "knowledge of an intervening lien in this context does not by itself show bad faith or fraud that would invalidate the mortgage under [46 U.S.C. § 922(a)(3) ]." *Avondale Shipyards, Inc. v. Tank Barge ETS 2303*, 754 F.2d 1300, 1311 (5th Cir.1985). Appellant does not suggest any other indications of fraud or bad faith. Therefore, we do not find a genuine issue of disputed fact regarding the validity of Borg-Warner Mortgage 3.

AFFIRMED.